sisted that it be constructed according to specifications. After Forgotston disappeared, they paid certain compulsory labor claims. These acts, under the circumstances, indicate nothing more than an intention of the Potters to conserve their interests under their mortgage, and do not point to copartnership or joint enterprise.

The plaintiff, in addition to its relief against the title company, is entitled to a personal judgment against the defendant Forgotston. The defendant lienors, having filed their liens only against Forgotston as owner, can assert no claim against the title company (Packard v. Sugarman, 31 Misc. Rep. 623, 66 N. Y. Supp. 30), and are limited to a personal judgment against Forgotston (Bradley & Currier Co. v. Pacheteau, 175 N. Y. 492, 67 N. E. 1080).

Judgment accordingly.

---

(50 Misc. Rep. 29.)

### SIRE v. LONG ACRE SQUARE BLDG. CO. et al.

(Supreme Court, Special Term, New York County. March, 1906.)

**1. MORTGAGES—RESTRAINING FORECLOSURE—EVIDENCE.**

Where an action was brought to restrain the foreclosure of a mortgage given by a corporation on a leasehold interest held by it, the grounds for restraining the foreclosure were not established by the evidence, and there was no proof that the default of the corporation in the covenants contained by the mortgage were due to any act of the holder thereof, he will not be restrained from enforcing his security.

**2. SPECIFIC PERFORMANCE—CONTRACT—EVIDENCE.**

An action for specific performance of a contract cannot be maintained, where the evidence leaves it a matter of doubt as to whether the contract was ever consummated, and, if it was, plaintiff was in default in carrying out his part of the agreement.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 387–395.]

**3. MONEY PAID—VOLUNTARY PAYMENT—RECOVERY.**

Where plaintiff paid taxes and the rent on a certain leasehold, having no interest in the property, the payment is a voluntary one, where no fraud or deceit is shown, and plaintiff cannot recover against the holder of the leasehold the amount so paid.

[Ed. Note.—For cases in point, see vol. 35, Cent. Dig. Money Paid, §§ 1–16.]

Action by Henry B. Sire against the Long Acre Square Building Company and others for specific performance. Judgment dismissing complaint.

Franklin Bien, for plaintiff.
Wm. C. Roe, for defendant.

GILDERSLEEVE, J. The object of this action is to judicially determine the respective rights of the plaintiff, Henry B. Sire, and the defendant, Edward R. Thomas, arising out of an alleged agreement between Leander S. Sire, a brother of said plaintiff, and the said Thomas, concerning certain leasehold property located at the northwest corner of Broadway and Forty-Fifth street, in the city of New York. The said agreement was assigned to the plaintiff before this action was commenced. The testimony consists of about 1,000 typewritten pages, and

as to many of the questions involved there is a very sharp conflict of evidence. It appears that in the summer of 1902 the said Leander S. Sire held, in the name of Joseph J. Corwin, one of the defendants herein, a leasehold from the trustees of Henry Astor of the corner lot at Broadway and Forty-Fifth street above mentioned, where he had begun the construction of a theater, and that there was a mortgage of $25,000 upon said leasehold, which the said Sire claimed he controlled; that the said Sire had become embarrassed for want of sufficient funds to carry out the project; that at this stage he met the defendant Thomas, brought the matter to his attention, and disclosed the condition of affairs; that in response to the proposition of said Leander S. Sire that the said Thomas should unite with him in the enterprise, said Thomas accepted on the general understanding that he would be expected to furnish about $60,000 out of a total of $100,000 necessary to carry out the enterprise; that said Thomas advanced some money, pursuant to this general understanding, before obtaining legal advice and before the details of the scheme and the conditions upon which the money was to be advanced had been settled; that soon after the first advance of money by said Thomas had been made he employed Messrs. Sullivan & Cromwell to act for and represent him in the matter; that Mr. Albert S. Ridley, a lawyer associated with the said firm of Sullivan & Cromwell, and one of the defendants herein, acted in behalf of said firm and became the representative of said Thomas in the business; that the said Joseph J. Corwin, throughout all the transactions that are the subject of inquiry in this litigation, held the legal title to, or represented the interests owned or claimed by, the said Leander S. Sire. It may be here noted that said Sire testified that he too left everything relating to this matter to the said Ridley, who acted as well for him as for said Thomas, although it is not denied that some one from the office of Albert I. Sire, a lawyer, and a brother of Leander S. Sire, took some part in certain steps of the proceedings in behalf of Leander S. Sire. It will thus be seen that the testimony of Albert S. Ridley is a very important factor in this controversy. It further appears that before any definite understanding had been reached and details agreed upon by the principals, namely, Leander S. Sire and Edward R. Thomas, fixing their rights and obligations in the enterprise, these gentlemen agreed that it was desirable to acquire leaseholds to the west, adjoining the corner property, in order that the plot upon which the proposed building was to be erected might be enlarged; that accordingly, through their joint efforts, the Varnum lease of the lot immediately adjoining on the west was obtained at a cost of $11,500, paid by the said Thomas, and an assignment thereof taken in the name of Milton L. Bouden, one of the defendants herein, as the personal agent or dummy of said Thomas; that this was in July, 1902; that later on the next lease to the west, known as the "Loomis leasehold," was acquired and assigned to the said Bouden, at a cost of about $8,500, which was paid by the said Thomas; that in addition to these sums the said Thomas also advanced $17,000 to clear away incumbrances on the Corwin leasehold, first above mentioned, and said leasehold passed by assignment to the said Bouden, and thus Bouden (practically Thomas) held the leases for the entire

property upon which the contemplated building was to be erected; that subsequently the trustees of Henry Astor, the owner of the fee, granted a new lease in exchange for the three leases above mentioned, known hereafter as the "consolidated lease." It appears, further, that after the said Sire had acquired the corner leasehold, and held and owned the same in the name of Corwin, as above stated, and before said leasehold was transferred to the said Bouden, he expended in the acquisition and maintenance of the lease, and also in excavating for the contemplated improvements, considerable sums of money. The plaintiff claims that the sum thus expended amounted to $30,000. It further appears that, notwithstanding these large expenditures of money by both parties and the importance of the project, no written agreement was ever entered into between the principals, Leander S. Sire and Thomas, or any one in their behalf, setting forth the details of the enterprise and the conditions upon which the various sums of money had been and were to be advanced by the respective parties.

While, as we have seen, the said Leander S. Sire stated that after the employment of Messrs. Sullivan & Cromwell he left everything to the said Ridley, in view of other testimony given by him and other witnesses we are not justified in assuming that the said Leander S. Sire concedes that the matter was entirely in the hands of Mr. Ridley. I think it must be said, however, from a consideration of all the testimony, that there was an effort to carry out the general plan outlined by said Ridley. Certainly the proposition of Ridley to organize a corporation, to be known as the Long Acre Square Building Company, with a capital of $100,000, divided into 1,000 shares of $100 each, par value, was acceptable to all parties. It may be stated, as conceded, that it was agreed by said Sire and said Thomas that Thomas was to be given the control of the corporation by having two of its three incorporators and directors (i. e., Albert S. Ridley and Henry M. Work) nominated in his interest, while said Sire was to have one representative in the company (i. e., Joseph J. Corwin), and that this agreement was to continue until the proposed building was constructed, when the control of the corporation was to pass to the said Leander S. Sire. The said corporation was organized in October, 1902. In May, 1903, the said Bouden transferred to the said corporation the several leaseholds that he had acquired, as above stated, by assigning the said consolidated lease, and received as a consideration therefor a bond and mortgage covering said leasehold, and 995 shares of the capital stock of said corporation. This was an interest-bearing purchase-money mortgage, dated May 5, 1903, and due and payable on May 5, 1904, with the usual provisions for forfeiture in case of failure by the mortgagor to pay interest, rent, or taxes. It is evident from the testimony that it was contemplated by the parties that the money for constructing the theater and carrying on the improvement should be raised through the corporation as a medium, to this extent; i. e., that bonds to the amount of $130,000 were to be issued and utilized for the purpose of acquiring the necessary funds. It seems equally true that it was understood that when the theater was completed the said Leander S. Sire should have 75 per cent. of the capital stock and the said Thomas 25 per cent. thereof. All the corporate

formalities for the trust mortgage as security for the said bonds were complied with. The preparation of the mortgage and bonds was under way, but never completed. No bonds were ever issued nor was the stock distributed. The treasury of the company was practically empty, the rent and taxes were defaulted, and the said Bouden proceeded to foreclose the purchase-money mortgage. Issue was joined in said foreclosure action, and it has been tried, but not yet decided.

A portion of the relief demanded by the plaintiff in this action is that the foreclosure of said mortgage be restrained and that the mortgage be declared security for both the plaintiff and said Thomas, in proportion to their investments in the said leaseholds. It may be stated here that in June, 1904, the defendant the Long Acre Square Building Company, under and by virtue of a final order in summary proceedings commenced by the lessors in the consolidated lease, heretofore described, was dispossessed of said leasehold premises by reason of the nonpayment of rent and taxes, which by the terms of said lease the said company was required to pay. It appears from the testimony that late in the year 1904 the said Thomas procured a new lease of the premises in question from the Astor estate, taking the same in the name of, and caused it to be delivered to, Charles F. Tracy, as his agent and representative, for the purposes of said lease. It further appears that about this time a new corporation was formed, styled the "Long Acre Square Theater Company," and that said Tracy assigned and transferred said lease to the last-named company. It should be noted that the said Long Acre Square Theater Company, the said Charles F. Tracy, and the trustees of Henry Astor, the lessors named in the last-mentioned lease, are not parties, nor is any one of them a party, to this action. It appears that the plaintiff herein, on behalf of the defendant corporation and in his own name, as preliminary to redemption proceedings, tendered to the Astor estate, within one year from the entry of the final order in the dispossess proceedings heretofore mentioned, the amount of rent, taxes, costs, and interest involved in said proceedings, and that he claims it to be the right of the company to be restored to the possession of said premises and that the necessary steps to secure such alleged right are now being taken. While these incidents, arising out of the dispossess proceedings, present a highly involved condition of affairs, I cannot see that they affect the question of the enforcibility of the mortgage.

The plaintiff claims that the action to foreclose the mortgage was not brought in good faith, but at the instigation of Thomas and in fraud of Sire's rights, for the reason that Bouden held said mortgage, not for Thomas only, but also to cover Sire's investments, pursuant to a mutual understanding that Thomas and Sire had entered into, to the effect that the mortgage was a mere temporary security for their joint benefit. This contention is not supported by the evidence. I can find no testimony indicating that Thomas, or Ridley in behalf of Thomas, or any other person in the interest of Thomas, have had anything whatsoever to do with causing or bringing about the defaults of the Long Acre Square Building Company, in the performance of the covenants of said mortgage. We have seen that the said Sire had advanced some

money before the consolidated lease was assigned to the corporation and the mortgage in question given. The plaintiff claims that the money so advanced amounted to $30,000, and that this mortgage was given to secure the said $30,000 and the $17,000 that had been advanced by Thomas to clear up the Corwin lease. If this claim is sustained, it must be found that Thomas by the transfer of the leases, which he owned in the name of Bouden, to the corporation, parted with two of the pieces of property, namely, the Varnum and Loomis leases, for which he had paid $19,800, without receiving any security therefor. I do not think this claim is supported by the evidence. On the contrary, I consider the preponderance of evidence is clearly against this contention of the plaintiff. Documentary proof strongly corroborates the testimony of Ridley on this branch of the case. The amount of the mortgage is exactly the sum appearing on Exhibit 2, which sets forth in detail the moneys advanced by Thomas, together with the interest on the various sums down to the time of the mortgage. The corporate minutes show that Sire's special representative, Corwin, was present at both the stockholders' and directors' meetings, when the exact figures in this mortgage were named, and the bond and mortgage show that Corwin executed the same as president of the company. Moreover, Sire testified upon the trial of the foreclosure action, in which a decision is now pending, that he was to be reimbursed for his prior advances by receiving 75 per cent. of the capital stock. This statement is entirely inconsistent with the plaintiff's claim that $30,000 of the consideration named in said mortgage was the money Leander S. Sire had advanced.

It may, we realize, very well be said that this view of the transaction gives to Thomas a great advantage over his associate in the matter of security for money advanced down to the time the mortgage was made. Leaving out of consideration for a moment the conflicting testimony on this branch of the case, and remembering the undisputed fact that Sire, at the time he enlisted Thomas in the scheme, was in imminent danger of losing all unless aid was speedily had to enable him to satisfy pressing claims, it was not unreasonable that Thomas should have the mortgage to secure his advances and that Sire should wait for reimbursement until further development of the enterprise. Considering all the evidence, coupled with reasonable probabilities, the conclusion is irresistible that the mortgage was for the benefit of Thomas alone and intended to secure him for his advances on the leaseholds, which were the subject of the mortgage, and that it is enforceable by Bouden as a valid security according to its terms. It follows that no decree can properly be made in this action restraining the foreclosure of the purchase-money mortgage. It will be observed from the foregoing discussion that we have been guided by the conviction, supported, as we believe, by the evidence, that the acts and incidents that resulted in the acquiring by Bouden of the said purchase-money mortgage came about pursuant to a general understanding between Sire and Thomas to enter into a joint enterprise for acquiring the leases and constructing a theater, and before definite arrangements had been made as to the details.

We will now consider the demand by the plaintiff for relief in the

nature of specific performance. No written agreement was ever executed by the parties. If a complete agreement was ever entered into, it was verbal, and must be determined from circumstantial documents, incidental memoranda, and conflicting testimony. There is grave doubt if the minds of the parties ever fully met on the details to be observed and kept in carrying on the enterprise. The learned counsel for the plaintiff urge that the decision here must turn upon "which one broke the original agreement with respect to financing the company and carrying out its project," and charge the guilt upon Thomas in failing to advance 60 per cent. of the funds contemplated and required. The plaintiff demands that "said Thomas be compelled to supply the defendant company with 60 per cent. of the funds necessary to perfect the plans of the company, upon plaintiff paying 40 per cent. thereof," and that said company be further "compelled to issue its stock to the defendant Bouden, and that he be compelled to deliver 75 per cent. thereof to plaintiff." I am satisfied that the plan of procedure was left by the parties to Ridley to formulate, and that Exhibit 1 sets forth generally the plan as outlined by him. It is as follows:

"Long Acre Square Building Company. Procedure. Assignment of the three Astor leases by Bouden to the company, and payment therefor in 995 shares of stock and the purchase-money mortgage on the leases for advances with interest to date of transfer. The 995 shares to be deposited with satisfactory trustee, to be delivered 748 shares to L. S. Sire and 247 shares to E. R. Thomas 90 days after the architects of the building have certified it to be complete and there are no liens against the property on account of construction. Company to obtain new lease of premises. Company to employ Mr. Koehler as architect and Mr. Thompson as consulting architect. Sullivan & Cromwell to act as counsel for company until final division of stock. Albert S. Ridley to resign as director when stock is divided. Company to make building contract with nominee of Sire on proper terms. Company to execute mortgage to provide for cost of building. Sire to take first $5,000 in bonds for cash, at par. Contractor to receive bonds at par for cost of work, of which Sire will take first $20,000. Balance will be taken by Sire and Thomas in the proportion of 40 to 60. Final adjustment to be made when stock is divided. At that time Sire and his nominee will hold 750 shares, which will represent his interest in the leaseholds at the time of purchase by Mr. Bouden and whatever personal attention he may give to the company's affairs. Mr. Thomas and his nominees will hold 250 shares of the stock. Mr. Sire will take 40 and Mr. Thomas 60 per cent. of the bonds. Said bonds shall represent only the actual cash invested by each in the enterprise of the company from the time of the purchase of the leaseholds by Bouden. Forty thousand dollars of said bonds shall be deposited with the Seventh National Bank for prior loans to L. S. Sire."

Ridley testified that the foregoing memorandum of procedure was prepared by him and a copy given to Sire at his request. It is unnecessary to say that the plan, as above outlined, was never fully carried out. The steps that were actually taken, however, are substantially in accordance with the plan. The three Astor leases were assigned by Bouden to the company, and the consideration therefor was 995 shares of the stock and the purchase-money mortgage. It may be mentioned here that the remaining 5 shares of stock were issued to the directors. I think it must be said that it was contemplated that the company should raise the money with which to make payments for the construction of the building by an issue of mortgage bonds, and that Sire should take the first $5,000 of said bonds at par, paying therefor in cash, in order

to furnish the company with ready money to meet current expenses; that said Sire agreed to exhibit vouchers for expenses incurred by him after Thomas came into the enterprise to an amount which, in addition to said $5,000, would make up practically two-thirds of the advances of said Thomas in acquiring said leasehold interests and in the payment of expenses incident thereto; and that the remaining amount of said bonds, to wit, $100,000, should be taken by Sire and Thomas in the proportion of 40 per cent. thereof by Sire and 60 per cent. thereof by Thomas. Without going further into the discussion of what may be said to have been the agreement between Thomas and Sire, it must be observed that Leander S. Sire entirely failed to pay the said $5,000 in cash, above mentioned, or to produce vouchers to the extent promised by him, and that therefore, even if the agreement was of such a character as to justify the form of relief demanded, to wit, specific performance, which we seriously doubt, the plaintiff's assignor is in default and has forfeited any rights which he might otherwise have had under the agreement.

Having reached the conclusion above stated, I deem it unnecessary to pass upon the claim urged by defendants to the effect that the agreement alleged by the plaintiff to have existed between Leander S. Sire and Thomas is not assignable, and cannot, therefore, be made the basis by this plaintiff for any relief whatever in this action. There remain to be considered the payment by the plaintiff of the $7,800 rent and taxes on the leasehold in question, and the demand of the plaintiff that this sum be charged against the company alone, that its directors be compelled to vote a resolution to make such payment a legal obligation in favor of plaintiff, and that plaintiff have a judgment against the company therefor. There is no claim that this payment was induced by deceit, and there is no evidence of such mutuality as would warrant a court of equity in coming to the plaintiff's relief on account of this payment. It appears that, rent to the amount of about $3,800 and taxes amounting to about $4,000 being in default in February, 1904, the trustees of Henry Astor commenced dispossess proceedings. The evidence warrants a finding that these sums were paid by Henry B. Sire, the plaintiff in this action, and the proceedings stopped. The payments above named were made after notice to Thomas. Subsequently the company was requested to confirm said payments and recognize them as its own obligations. The company never complied with the request. It is to be observed that this particular issue is between plaintiff and the company, and that no relief is asked against Thomas in respect thereto. There is no proof showing that at the time the payments were made the plaintiff had any interest in the property, and, as above stated, there is no claim that the company practiced any fraud or deceit upon the plaintiff to induce the payment. It does not appear that the directors of the company knew of the payment until after it was made. Under these circumstances it must be held that the payments in question were voluntary and that no cause of action therefor lies against the company in favor of the plaintiff. The conditions under which claims of this character may be enforced are correctly set forth in Pomeroy (3 Eq. Juris. [3d Ed.] § 1241, note):

"Finally, in order that there may be a claim for reimbursement and a lien as security therefor in any case of this general kind, either the aid of a court of equity must be requisite on behalf of the owner against whom the claim for reimbursement is made, so that he can be compelled to do equity. or else there must be some element of fraud in the transaction as ground of equitable interference."

Defendants are entitled to judgment on the issues dismissing the complaint on the merits, with costs. The defendants' requests to find are already before the court. Let the plaintiff hand up his proposed requests to find, and let each party submit a proposed judgment.