No. 3890

Second Circuit

CAPPEL v. PIERSON

(January 27, 1931.   Opinion and Decree.)

J. C. Cappel and F. B. Cappel, of Alexandria, attorneys for plaintiff, appellant.

Overton & Hunter, of Alexandria, attorneys for defendant, appellee.

WEBB, J.   In this action plaintiff, Mrs. Marvin Cappel, individually and as natural tutrix of Marvin and Samuel Cappel, issue of her marriage with Dr. Marvin Cappel, seeks to obtain judgment against defendant, Dr. Clarence Pierson, superintendent of the insane asylum, known as the Central Louisiana State Hospital, for damages resulting from the death of Dr. Cappel, on November 9, 1929, who was killed by E. B. Smith, who had been an inmate of the asylum.

Plaintiff in addition to the facts above stated, alleged in substance that said E. B. Smith had been adjudged insane on January 29, 1929, and committed to the hospital of which defendant was superintendent, from which he had escaped on March 16, 1929, and to which he was returned on November 8, 1929; that defendant had released said Smith on the morning of November 9, 1929, and that he, Smith, had killed Dr. Cappel on the afternoon of the same day; that a lunacy commission had found E. B. Smith was insane at the time he killed Dr. Cappel, and that he was not responsible for his actions, and that he was ordered to be confined in the ward of the Central Louisiana Hospital, allotted to the criminal insane.

Plaintiff further alleged that when Smith was returned to the hospital on the night of November 8, 1929, he was violently insane, and was placed in charge of two or more attendants who had great trouble in quieting and subduing him, and that defendant knew, or should have known of the condition of Smith.

Plaintiff also alleged that defendant in violation of his duties as superintendent of the hospital, and with wilful and crim-

inal disregard of the rights, life and liberties of his fellow citizens, deliberately and maliciously permitted said E. B. Smith to have his liberty, when he knew that Smith was suffering with paranoia, which is recognized as an incurable mental disease, causing the sufferer to be extremely dangerous, with a persistent desire to take human life, and that the death of Dr. Marvin Cappel was due to the fault and negligence of defendant.

Defendant excepted that the petition failed to state a cause or right of action, which was sustained, and judgment rendered dismissing plaintiff's suit, from which she appeals.

In presenting the cause here it was stated in substance that the exception was based on the following contentions:

(1) That plaintiff failed to allege any facts showing that defendant was negligent;

(2) That the petition stated a cause of action against E. B. Smith, and in the absence of any allegations that defendant conspired with Smith, or was in any manner directly connected with the act of Smith in killing Dr. Cappel, defendant could not be held liable for any damages sustained by plaintiff resulting from the death;

(3) That the charge of negligence against defendant being that he as superintendent of the asylum had released Smith when he knew Smith was insane, shows that defendant was acting within the line of his duties as the representative of the State, in releasing Smith and that defendant could not be held guilty of negligence, and liable for any damages resulting from the act of Smith after he had been released, or that the act of defendant in releasing Smith was not the proximate cause of the death of Dr. Cappel.

Considering the third contention, it is conceded that defendant had discretionary authority to release the inmates of the asylum under parole, and that so long as defendant exercised his discretionary authority in good faith, he could not be held guilty of negligence; but it is contended that when the inmate who has been released from the asylum commits an act which causes damages, it is permissible to show that the superintendent had not exercised his discretion in good faith, or that he acted maliciously and without regard for the safety of the public.

There cannot be any doubt that defendant, through the board of administrators of the hospital was the representative of the state in conducting an institution established and maintained by the state, and that in releasing persons confined in the institution was vested with discretionary authority, or powers of a quasi-judicial nature, and defendant having exercised his authority in releasing E. B. Smith, one of the inmates of the institution; defendant's good faith cannot be questioned in an action for damages resulting from the act of E. B. Smith, even under a charge that defendant acted maliciously, or without regard to the rights or safety of the public (Spading v. Bilas, 161 U. S. 483, 16 S. Ct. 631, 40 L. Ed. 780: Sweeney v. Young, 82 N. H. 159, 131 A. 155, 42 A. L. R. 757).

However, if plaintiff can hold defendant liable for negligence in the discharge of a duty owing by him to the public, which resulted in damages to her (see McMullin v. Board of Commissioners, 18 Colo. App. 117, 70 P. 449, and authorities), there is not any statute providing that

the state board of administrators, or persons in control of hospitals for the insane, shall be answerable for the acts of persons who may be confined in such institutions, or who may have been released therefrom.

It is therefore apparent that the right of plaintiff, if any, to recover judgment against defendant for damages resulting from the act of E. B. Smith, must be based on the general law, or the provisions of articles 2315 and 2316, Civil Code (Baudry-Lacantinerie, vol. 15, No. 2910), in which it is essential that the negligence charged must be shown to have been the proximate cause of the injury or damage, and we are of the opinion that, even though defendant was guilty of negligence in releasing E. B. Smith, it cannot be said that such negligence, or the fact that E. B. Smith was released, was the proximate cause of the death of Dr. Cappel.

"* * * The defendants could not, by the exercise of ordinary care and caution, have anticipated, foreseen, or expected that the death of the plaintiff's intestate would follow as the natural result of their act in discharging Rader from the hospital. Their erroneous or mistaken opinion or judgment that Lonnie Rader was sane, or insane, that his being at large would not be injurious to him or dangerous to the community, or that there were other sufficient reasons why he should be discharged, and their act in discharging him, did not cause her death. It may be that, if they had kept Rader confined in the State Hospital, he might not have killed her; but it is equally true that if he had never been born, or had never become insane, he would not have killed her. The discharge of Rader, his absence from the hospital, his presence in Catawba county, and his presence at church on the day of the homicide, was a mere condition which accompanied, but did not cause, the injury. * * *" Bollinger v. Rader et al., 151 N. C. 383, 66 S. E. 314, 134 Am. St. Rep. 999.

We are of the opinion that defendant be-

ing vested with discretionary authority or powers of a quasi judicial nature in releasing inmates of the institution, his good faith in releasing E. B. Smith cannot be questioned, but, if so, that his negligence in releasing E. B. Smith was not the proximate cause of the death of Dr. Cappel; and it is unnecessary to consider either of the other grounds on which the exception was stated to have been based.

The judgment is affirmed, at appellant's cost.