341 So.2d 1376 (1977)
Chester FRANK, Plaintiff-Appellee,
v.
Elin PITRE, Sheriff of Evangeline Parish, Defendant-Appellant.
No. 5779.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1977.
Dissenting Opinion February 2, 1977.
Rehearing Denied March 2, 1977.
*1378 Fusilier, Pucheu & Soileau by J. Wendel Fusilier, Ville Platte, for defendant-appellant.
White & Pitre, Marion O. White, Opelousas, Murphy W. Bell, Baton Rouge, for plaintiff-appellee.
Before HOOD, C.J., and CULPEPPER and GUIDRY, JJ.
GUIDRY, Judge.
Plaintiff, a policeman for the City of Ville Platte, seeks damages for personal injuries sustained when he was shot by a prisoner of the Evangeline Parish Sheriff's Department. Made defendant is Elin Pitre, Sheriff of Evangeline Parish. The trial court rendered judgment in favor of plaintiff in the amount of $41,004.00. Defendant appeals.
The shooting occurred shortly after midnight on September 12, 1971. Plaintiff, who at the time of the incident was uniformed and working in his capacity as a policeman, had been stationed in a section of Ville Platte known as the "woods". The "woods" is a strip of bars and nightclubs fronting Dr. Carver Street in that city.
During the course of plaintiff's patrol of this area he was called upon to intervene in a fight which had broken out in the "Happy Landing Club". After quietening the row plaintiff escorted Sidney Gallow, one of the participants in the fight, outside for a talk. Following plaintiff's departure from the club with Gallow another scuffle arose inside. In this latter scuffle Jessie Sims, the floorwalker at the Happy Landing Club, was hit and knocked out by one L. J. Dick. Dick had not been involved in the previous altercation. After the blow by Dick, Sims fell unconscious to the floor. Dick then took Sims' pistol from his holster and headed for the door. At approximately the same time, plaintiff, who was standing across the street from the club with Sidney Gallow, left Gallow and walked towards the entrance to the Happy Landing. As Dick fled through the screen doors of the club he targeted plaintiff, then only 5 feet away. Plaintiff was shot three times by Dick. He sustained wounds in his chest, face and shoulder. L. J. Dick was shot to death at the scene by another city policeman.
Dick was at the time of this incident, a prisoner of the Evangeline Parish Sheriff's Department. About five weeks prior to this shooting incident, on August 5, 1971, Dick was arrested by the Ville Platte City Police on charges of simple burglary. At that time Dick had just returned to Ville Platte after serving 20 months in the State Penitentiary at Angola. Dick was on supervised probation at the time of his arrest on August 5, 1971. Dick was subsequently on or about August 12, 1971 transferred from the Ville Platte City jail to the Evangeline Parish jail. Thurman James, Dick's parole officer, as a result of this arrest issued a detainer on Dick for a parole violation. (C.Cr.P. Article 899). There is nothing in the record to suggest that the detainer was lifted or that Dick had been admitted to bail.
At the trial on the merits plaintiff contended that the proximate cause of his injuries was the negligence of the defendant in failing to keep L. J. Dick in custody. Specifically plaintiff alleged that Dick, known by defendant to have a propensity for violence, was at large in the community with the consent of defendant. Defendant denied that Dick had been released with his consent and further denied any responsibility for the incident contending that the prisoner was an escapee. Defendant alternatively asserted the defense of assumption of the risk.
The trial court found that the prisoner, L. J. Dick, was not an escapee, but rather had been given liberty in accordance with the policies of the defendant. The trial court determined that this negligence of the Sheriff and his subordinates contributed directly to the shooting of plaintiff, who was in no way at fault, and therefore defendant's *1379 negligence was the proximate cause of the damages plaintiff sustained. The trial court also determined that although the plaintiff was a police officer in a dangerous occupation he had not assumed the particular risk involved herein.
A determination as to whether, under the circumstances of this case, defendant bears any responsibility to plaintiff for the injuries sustained must be reached by application of the duty-risk inquiry as espoused in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Under Hill, supra, this inquiry is as follows:
1. What, if any, duty was owed by defendant to plaintiff?
2. Was there a breach of the duty?
3. Was the breach of duty a substantial cause-in-fact of the injury?
4. Was the risk and harm within the scope of protection afforded by the duty breached?

WHAT, IF ANY, DUTY WAS OWED BY DEFENDANT TO PLAINTIFF?
A Sheriff has the responsibility for the custody of inmates in his parish jail. The Sheriff is the keeper of the public jail of his parish. LSA-R.S. 33:1435; LSA-R.S. 15:706, Walker v. Interstate Fire & Casualty Co., 334 So.2d 714 (La.App. 2nd Cir. 1976). Accordingly, a sheriff has the legal duty to detain persons lawfully in his custody. However, further examination of this duty reveals that the duty of the Sheriff to maintain and restrain his prisoners is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. As stated in Green v. State, 91 So.2d 153 (La.App. 1st Cir. 1956) writs denied February 25, 1957:
"A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received."
Thus, if there be a breach of the Sheriff's duty to continue the prisoner's incarceration, it can only be complained of by those whose injury was proximately caused by the breach. That is, the injury received should be one for the prevention of which the duty exists. A discussion of these elements will follow.

WAS THERE A BREACH OF THE DUTY?
We now examine the facts to determine whether the defendant, Sheriff, breached his duty. As aforestated the trial court found that the defendant was negligent in that he knew of L. J. Dick's propensities for violence but nonetheless allowed the prisoner weekend liberty.
Without question the evidence established that L. J. Dick was a man of violent propensities. Although most of the witnesses agreed that L. J. Dick seldom made use of weapons, it was generally agreed by all witnesses that Dick was a "fighter" who had on numerous occasions been cited for breaches of the peace. Furthermore Dick had just recently returned from serving a sentence at the state penitentiary on a simple burglary conviction when he was again apprehended by the Ville Platte Police on another charge of simple burglary. The Sheriff was aware that Dick was awaiting trial on this latter charge and that a detainer had been issued charging him as a parole violator.
The evidence also establishes that L. J. Dick was not an escapee, but rather, the prisoner, accompanied by two fellow inmates, had just signed out and left the parish jail with the apparent consent of the jailer. The testimony reflects that the prisoners left the jail on Saturday morning, September 11, 1971. Defendant denies that L. J. Dick was given liberty and instead contends that L. J. Dick left by means of a pass key he had secured from another prisoner. The trial court rejected this contention. *1380 We find no error in this determination. In any event, the evidence is clear that defendant was aware that Dick was not incarcerated and yet made no real effort to recapture him. The Sheriff's deputies testified that on September 11, 1971 during the late afternoon, after Dick was found to be missing, a patrol car was sent to the prisoner's mother's house. The mother denied this. The Sheriff's deputies admitted that this was the only action they took since they were not concerned about Dick's absence and figured he would be back. The Sheriff's department issued no bulletins for the pickup of L. J. Dick, nor did the Sheriff's log book indicate that Dick had escaped.
Under the evidence outlined above we agree with the findings of the trial court. The prisoner L. J. Dick had violent propensities which were known to the defendant, yet knowing this the defendant custodian failed to act in a reasonable manner in securing or in trying to re-secure the custody of Dick. We conclude that under the facts of this case the defendant had a duty to retain and maintain the prisoner L. J. Dick in his custody and that he breached this duty.

WAS THE BREACH OF DUTY A SUBSTANTIAL CAUSE-IN-FACT OF THE INJURY?
Simply stated, but for the defendant's breach of duty to keep his prisoner in custody, the plaintiff would not have been shot by the prisoner. Certainly this breach of duty which enabled this prisoner of violent propensities to be free of defendant's custody was a substantial cause in fact of the plaintiff's injuries.

WAS THE RISK AND HARM WITHIN THE SCOPE OF PROTECTION AFFORDED BY THE DUTY BREACHED?
Having determined that the defendant's breach of his legal duty was a cause in fact of the plaintiff's injuries we now determine if the duty breached was a duty imposed to protect against the particular risk involved. If so the defendant's liability has been established.
In Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), the court stated:
"All rules of conduct, irrespective of whether they are the product of the legislature or a part of the fabric of courtmade law of negligence, exists for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him merely because it is shown that the violation of the rule played a part in producing the injury."
It must be conceded that one of the purposes, if not the main purpose, of the duty to keep L. J. Dick in custody was to protect against the risk that someone might be intentionally injured by him if he be permitted at large in the community. As aforestated Dick was a known criminal with a propensity for violence towards others. That someone might be intentionally injured by him, if he be released legally or otherwise, was certainly a natural, probable and foreseeable consequence. In this case, it is clear, that the duty breached was a duty imposed to protect against the particular risk which caused injury to plaintiff.[1] *1381 For the foregoing reasons we conclude that the defendant was negligent and that his negligence was a proximate cause of the injuries sustained by plaintiff.

ASSUMPTION OF THE RISK
In considering defendant's defense of assumption of the risk we are aided by our Supreme Court's decision in the case of Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). The facts of Langlois, supra, show that the plaintiff therein was a fireman who sustained injury from gas inhalation, the gas having negligently escaped from the premises of the defendant. The plaintiff fireman, had inhaled the gas after responding to a call to give assistance to two men trapped in a tank on property adjacent to that owned by the defendant. In discussing the defendant's defense of assumption of the risk the court in Langlois, supra, stated:
"In our case, Langlois did not enter the premises of Allied. He responded to the call to help others who were in imminent danger of suffering injury. In his response to the call his duty was to rescue those on adjoining premises whose lives and health were endangered by reason of Allied's fault. Any voluntariness on the part of Langlois could only be found if we assume a waiver because he became a fireman. Firemen, police officers, and others who in their professions of protecting life and property necessarily endanger their safety to (sic) not assume the risk of all injury without recourse against others. Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959). Here, Langlois' rescue mission on the premises other than defendant's would tend to minimize the extent to which Allied might be required to respond to damages to others. Langlois' primary duty as a fireman was to drive the fire truck. In regard to his specific duty, it cannot be said that he assumed the risk from gas any more than drivers of other vehicles who might be in and about the premises. He was subjected to the gas while the truck remained on *1382 the premises, during the return trip to the fire station, and finally at the fire station when he washed down the truck. The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. See Restatement (Second), Torts § 496 (1965), Symposium: Assumption of the Risk, 22 La.L.Rev. 1-166. Although Langlois as a fireman possessed more knowledge than many about the nature of gases and the consequences of exposure to gases, he did not here knowingly and voluntarily encounter the risk which caused him harm. He acted in response to duty, and his exposure to the risk in line with that duty was minimal. Langlois did not embrace a known danger with that consent required by law to bar his recovery for defendant's fault. The defendants must establish by a preponderance of the evidence their affirmative defense. They have failed to discharge the burden."
As further set forth in the case of McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975):
"It is fundamental that, in order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm. Plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk. Assumption of the risk is an affirmative defense which must be specially pleaded. The burden of proving this defense is upon the defendant."
In the instant matter the defense of assumption of the risk is predicated on the fact that the plaintiff, a police officer, knowingly and voluntarily assumed the risk of injury from this prisoner. Following the reasoning of Langlois, supra, we are of the opinion that the plaintiff, whose profession necessarily requires the protection of life and property, did not assume the risk of all injury without recourse to others. See also Briley v. Mitchell, 238 La. 551, 115 So.2d 851. Plaintiff's primary duty as a police officer was to patrol the area of Ville Platte known as the "woods". Although aware of L. J. Dick's arrest on the 5th day of August, 1971, it is not shown that plaintiff was cognizant of the issuance of the detainer by the Department of Probation. Additionally, there is no evidence to indicate that plaintiff knew or had reason to believe that L. J. Dick was not lawfully free by reason of bail or otherwise on the aforesaid date. Plaintiff was not at the time of the incident attempting to take L. J. Dick into custody. Admittedly plaintiff, along with many patrons of the Happy Landing Club, possessed knowledge of L. J. Dick's presence in the establishment as well as his propensity for violence. However, plaintiff was only in the "woods" in response to his duty to patrol the area, and he, like the patrons, did not knowingly and voluntarily encounter or consent to the risk which caused him harm. (See discussion, infra: Risk and Harm Within Protection of Duty). Plaintiff did not embrace a known danger with that consent required by law to bar his recovery for defendant's fault. We are of the opinion that the defendant has failed to discharge his burden of proof in regard to his defense of assumption of the risk.

QUANTUM
The remaining issue for determination is whether the trial court abused its great discretion in its award of general damages to plaintiff. The trial court awarded plaintiff $40,000.00 in general damages.
The defendant contends that his liability is limited under the provisions of LSA-R.S. 33:1433, alternatively arguing that the trial court award of damages is excessive. Plaintiff in brief submitted to this court has asked for an increase in the award of damages, but plaintiff has neither appealed nor answered the appeal and therefore this issue is not before us.
LSA-R.S. 33:1433 provides in pertinent part:
"No sheriff of any parish of this state, nor his sureties, shall be liable for any act or tort committed by one of his deputies, or by any person commissioned as deputy *1383 sheriff by him, beyond the amount of the bond or limits of liability insurance furnished by said deputy sheriff, unless said deputy sheriff in the commission of the said act or tort, acts in compliance with a direct order of, and in the personal presence of, the said sheriff, at the time the act or tort is committed."
Clearly the statute applies only to acts and torts committed by the Sheriff's deputies, not the Sheriff. In the instant matter the tort committed was the Sheriff's negligent operation of his office in allowing the prisoner, L. J. Dick, to leave and remain out of his custody. As previously discussed the trial court found that L. J. Dick was not an escapee, but had been released for a "pass" in accordance with the policy adopted by the defendant Sheriff. We discern no error in this finding. We recognize that the deputy sheriffs and other subordinates aid the Sheriff in the execution of his duty as jail keeper, but the duty is his, and the right to set policy is his and consequently he and not the deputy sheriffs committed the breach of duty for which the plaintiff seeks recovery. We find LSA-R.S. 33:1433 inapplicable to the instant matter.
In support of his claim for damages plaintiff introduced the depositions of Drs. Ramson Vidrine and Charles Fontenot. The testimony of these two physicians showed that plaintiff had sustained multiple gunshot wounds of the chest, face, and left shoulder. Dr. Fontenot testified that plaintiff had received life threatening injuries.
Dr. Vidrine performed surgery on the plaintiff the night of the incident, September 12, 1971. Plaintiff was approximately 56 years of age. The surgery required removal of the bullets from plaintiff's back and one from the mouth. Bullet fragments remain in plaintiff's chest and lung region. The medical evidence shows that although plaintiff has fully recovered from his wounds he will suffer with lung problems and chest pains as a result of the injury for the rest of his life. The plaintiff has subsequently developed pleurisy which is an infection of the surface of the lung. Dr. Vidrine testified that due to plaintiff's susceptibility to respiratory ailments he cannot accept employment which will subject him to inclement weather conditions. Plaintiff's chest pains are accounted for by poor circulation of his blood to the heart, or "myocardial ischemia". This latter condition prevents plaintiff from performing any type of manual labor.
In reviewing the award of general damages granted by the trial court we are guided by well established principles. Appellate review of awards of general damages is limited to determining whether the trial court abused its great discretion. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). This being so, and the above facts being considered, we find no abuse of the trial court's discretion in its award of $40,000.00 to plaintiff.
For the above and foregoing reasons the judgment appealed from is affirmed. The costs of these proceedings to be borne by the defendant-appellant.
AFFIRMED.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I cannot agree with some of the major conclusions which my colleagues have reached.
They erred primarily, I think, in holding that Sheriff Pitre owed a duty to plaintiff "to continue the prisoner's incarceration."
The prisoner, L. J. Dick, was convicted of "simple burglary and forgery," a non-violent crime, in October, 1969, and he was sentenced at that time to serve five years in the State Penitentiary. He was 19 years of age at that time, and that was his first and only conviction of a felony. After serving 20 months of that term, he was released on parole in June, 1971, and was placed under the supervision of Thurman James, a Probation and Parole Officer.
Dick remained at liberty for about two months, until August 5, 1971, when he was arrested by the City Police of Ville Platte *1384 on a charge of "simple burglary and theft," another non-violent crime. He was transferred to the Evangeline Parish jail a few days later, where he was confined to await trial on that charge. He was never tried on the last mentioned charge, and he thus was never convicted of committing that offense.
The Probation and Parole Officer learned on August 16 or 17 that Dick had been arrested on the new charge, and he thereupon "filed a detainer" on him, so that the sheriff would detain Dick until a hearing could be held under LSA-C.Cr.P. art. 900 to determine whether he had violated the terms of his parole. A hearing was never held to determine whether Dick violated his parole, and no such determination of that issue was ever made.
The shooting incident which resulted in injuries to plaintiff, and in the death of Dick, occurred on September 11, 1971. At that time, Dick was not serving a sentence of any kind. He had been confined in the parish jail four or five weeks prior to that date simply to be held for trial on a pending charge and for a hearing on the question of whether he had violated his parole.
Under those circumstances, I think the sheriff owed a duty to the State to detain or hold Dick so that he would be present at the trial of the criminal charges which were pending against him, or at the informal hearing which was to be held to determine whether he had violated the terms of his parole. I do not believe that the sheriff owed plaintiff or anyone else a duty to keep Dick incarcerated or out of circulation, or to prevent him from roaming at large in the community, so that plaintiff or the general public would be protected from violence or injury by the accused.
I agree with the majority that defendant either allowed Dick to leave the jail, or that he made "no real effort to recapture him." The sheriff's conduct or his failure to act, however, did not violate a duty to protect plaintiff from injury. Dick had the legal right to be released on bail, and if bail had been furnished the sheriff would have been compelled to release him whether Dick would or would not commit acts of violence on plaintiff or the general public. If the pending charges had been dismissed, or if Dick had been acquitted of those charges, the sheriff would have been powerless "to continue the prisoner's incarceration," even if plaintiff could show that that was necessary for the protection of the general public. The duty of the sheriff, I think, was solely to detain or hold Dick for the State, in the event he didn't furnish bail, so that he would be present for the trial or hearing. The sheriff did not owe plaintiff a duty to keep Dick confined indefinitely in order that plaintiff and the public would be protected from possible harm.
In my opinion, my colleagues have erred in holding that defendant violated a duty to plaintiff by allowing Dick to leave the jail.
The second major error made by the majority, I think, is in holding that the release of Dick from the parish jail was a "cause-in-fact" of the harm suffered by plaintiff Frank. My colleagues dispose of that issue in two sentences, stating in substance that "but for" the release of Dick, plaintiff would not have been injured. I cannot agree with their reasoning. It would be at least equally as logical to reason that plaintiff would not have been injured "but for" the fact that Dick was released from the penitentiary after serving only one-third of his term, or "but for" the failure of plaintiff to arrest Dick earlier that evening when he observed him in the bar and knew that he recently had been arrested for parole violation. If Dick was well known to have such a "propensity for violence" that it constituted a danger to the general public for him to be allowed to roam at large, all as contended by plaintiff, then it seems to me that some duty rested on plaintiff and on his fellow officers to protect the public against Dick's acts of violence earlier that same evening when they, or at least plaintiff, saw Dick roaming at large. It might be said that plaintiff would not have been injured "but for" the failure of the above city police officers to do their duty.
Negligent conduct is a "cause-in-fact" of harm to another only if it is a substantial factor in bringing about the harm. Every *1385 act leading up to the incident which causes the harm cannot be said to be a cause-in-fact of that harm. In order for the negligent act to constitute a cause-in-fact, there must exist some direct relationship between that act and the resulting injury. The act must have been a necessary ingredient which brought about the accident or injury. The injury or harm must have been the natural, probable and foreseeable consequence of the negligent act. It is not enough to reason simply that "but for" the negligent act the harm would not have been inflicted. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972); Jones v. Robbins, 289 So.2d 104 (La.1974).
In the instant suit, the relationship between Dick's release from jail and the shooting incident which occurred thereafter is so remote that his release cannot be said to be a cause-in-fact of plaintiff's injury.
As will be pointed out later, Dick had never before used a gun or a weapon of any kind, and he had never injured anyone. His use of a gun for the first time on September 11, 1971, which resulted in injury to plaintiff, simply was not the natural, probable and foreseeable consequence of his being released from jail.
In my opinion, the majority erred in holding that the release of Dick was a substantial factor in bringing about the harm to plaintiff.
A third major error made by my colleagues, I think, is apparent in their response to the question, "Was the risk and harm within the scope of protection afforded by the duty breached?" In answering that question affirmatively, the majority states that "one of the purposes, if not the main purpose, of the duty to keep L. J. Dick in custody was to protect against the risk that someone might be intentionally injured by him if he be permitted at large in the community." In further answer to that question, the majority concludes, erroneously I think, that "Dick was a known criminal with a propensity for violence towards others," and that it "was certainly a natural, probable and forseeable consequence" of his release that someone would be intentionally injured by him.
For the reasons already expressed, I do not agree that one of the purposes of detaining Dick in the parish jail was "to protect against the risk that someone might be intentionally injured by him if he be permitted at large in the community." The sole purpose of incarcerating him was to make sure that he would be present at the trial.
I also differ with my colleagues in their finding that Dick had a "propensity for violence." The evidence, as found by the majority, shows that Dick was convicted of only one felony in his lifetime, and that was of an offense which did not involve violence. That conviction occurred in October, 1969, when he was 19 years of age, and there is no showing that he committed one single act of violence, or even a misdemeanor, between that date and the date he injured plaintiff, almost two years later. His conduct while in the penitentiary must have been good, since he was released on parole as soon as he served one-third of his sentence.
Although Dick was under charges of committing another non-violent crime at the time he injured plaintiff, he was never tried for or convicted of committing that offense, and my colleagues thus cannot rightfully assume that he was guilty of committing another felony. I think they unwittingly have considered him to be guilty of the recent offense charged, because they base their holding that defendant knew that Dick had "violent propensities" at least partly on the ground that "The Sheriff was aware that Dick was awaiting trial on this latter charge."
Dick also was never found to be a parole violator. And, neither was he an escapee or a fugitive from justice. The majority apparently feels that the filing of a "detainer" by the Parole Officer made, or helped to make, Dick a dangerous man, because they found that plaintiff was unaware of the danger and that he thus did not "assume the risk," partly because he was not "cognizant *1386 of the issuance of the detainer by the Department of Probation." I fail to see how the request for a detainer by the Parole Officer could give Dick a "propensity for violence," whereas he apparently did not have any such propensity while he was free and at large for a period of at least two months prior to that time.
Prior to October, 1969, while Dick was 19 years of age or less, he was convicted of one or more misdemeanors in the Ville Platte City Court and perhaps in the District Court. The number of misdemeanor convictions is uncertain, but my review of the evidence indicates that the number ranged from one to a maximum of possibly five or six such offenses. One such conviction occurred in the City Court for a small theft, and he was simply placed on probation. A police officer of the city stated that he knew that Dick had gotten into five or six fights, but there is no indication as to how many convictions, if any, resulted from those fights.
Plaintiff testified that Dick threatened him with a knife on one occasion a few years before the incident involved here occurred. His testimony to that effect, however, is not supported by the other evidence. On that occasion, for instance, plaintiff did not arrest Dick and did not charge him with aggravated assault, although plaintiff was a police officer on duty at the time. He stated, in fact, that he has never arrested Dick. Plaintiff has known Dick most of the latter's life, and with reference to Dick's "propensity for violence," Frank testified:
"Q. Actually, L. J. Dick, wasn't any more dangerous than any other young person drinking at the bars?
A. Thatnot that I know. I know he was a guy that wasn't going to stand for anything.
Q. Well, he was maybe hard headed on some occasions, is that right?
A. I know he wasn't going to stand nobody bugging him because he was going to fight back for sure, regardless who it was.
Q. But he would fight with his fists?
A. Yeah."
All other witnesses, including those called by plaintiff, testified that plaintiff was not dangerous, that he was not regarded as being violent, that he had never used a gun, a knife or a weapon at any time before September 11, 1971, and that on the occasions when he did get into fights at nightclubs or bars he fought only with his hands or fists, never with a weapon. The evidence does not show that he had ever injured anyone. In my view, there simply are no grounds on which the majority can base its conclusion that Dick had such a "propensity for violence" that it was dangerous for him to be allowed to roam at large in the community.
In my opinion, the injuries sustained by plaintiff did not result from any fault or breach of duty on the part of the defendant sheriff.
For these reasons, I respectfully dissent.
NOTES
[1] Compare Green v. State of Louisiana, through the Department of Institutions, supra, where it was held that the duty breached did not encompass the particular risk involved where the plaintiff sustained injury as a result of the escapee's negligent use of an automobile.

We distinguish the case of Cappel v. Pierson, 15 La.App. 524, 132 So. 391 (La.App. 2nd Cir. 1931). In Cappel, which came before the court on an exception of no cause of action, plaintiff's petition set forth the following pertinent allegations; that one E. B. Smith, adjudicated insane, was committed to the Central Louisiana State Hospital on January 29, 1929; that E. B. Smith escaped from the hospital on March 16, 1929, but was thereafter returned on November 8, 1929; that E. B. Smith was released from the hospital on the following day, November 9, 1929, by the superintendent, Dr. Pierson; that on the same day, November 9, 1929, following his release. E. B. Smith shot and killed Dr. Marvin Cappel. Plaintiff further alleged that defendant, Dr. Pierson released the inmate in violation of his duties as superintendent; that defendant knew at the time of the release that E. B. Smith was extremely dangerous and suffering with a mental disease; that defendant released the inmate without regard for the rights and safety of the public, and that defendant's actions were negligent and the cause of Dr. Cappel's death.
It was conceded by the parties that the defendant, Dr. Pierson, had discretionary authority to release inmates of the hospital under parole, and that so long as defendant exercised his discretionary authority in good faith, he could not be held guilty of negligence.
The court in Cappel found that as a matter of law, when defendant exercised his discretionary authority to release E. B. Smith, which authority was of a quasi-judicial nature, that defendant's good faith could not be questioned. Accordingly the defendant could not be held negligent. This notwithstanding, the court in dictum further held that if the defendant's good faith be questioned, and defendant's actions found to be negligent, that his negligence in releasing E. B. Smith was not the proximate cause of the death of Dr. Cappel. It is this latter holding which is relied upon in the instant matter.
Close inspection of the holding in Cappel reveals that it is easily distinguishable from the case at bar. The court in Cappel finding that defendant's actions were not the proximate cause of the doctor's death reasoned that the defendant's release of E. B. Smith was strictly a matter of judgment, and that defendant could not by the exercise of ordinary care expect that Dr. Cappel's death would follow as the natural result of his decision to discharge E. B. Smith. In the instant matter the defendant sheriff is not vested with discretionary power to release prisoners. Simply stated, his duty is to keep and detain prisoners in his jail. This being considered the inquiry into proximate cause, or duty-risk in the instant matter can obviously not be likened to that in Cappel. In Cappel the proximate cause inquiry arose as a result of the defendant's misjudgment in exercising his quasi-judicial function. See Webb v. State of Louisiana, 91 So.2d 156 (La.App. 1st Cir. 1956). Also see Walker v. Interstate Fire & Casualty Insurance Co., 334 So.2d 714 (La.App. 2nd Cir. 1976), wherein the plaintiff brought suit against the sheriff of the parish for injuries she received when defendant's prisoner, out of custody and known to be potentially dangerous, shot her. Plaintiff alleged that the sheriff was negligent in that he knew of the prisoner's dangerous nature yet let him come and go to jail at will. Defendant sheriff filed an exception of no cause of action contending that the injury of which plaintiff complained was too remote to be attributable to the negligence of defendant sheriff. The court found that plaintiff stated a cause of action.