354 So.2d 602 (1977)
Gennie V. GRAHAM, Individually and as Administrator of the Estate of her minor child, Michael Jerome Graham
v.
STATE of Louisiana, Through the Louisiana HEALTH AND SOCIAL and REHABILITATION SERVICES ADMINISTRATION.
No. 11647.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Alex Wall, Baton Rouge, of counsel for plaintiff-appellant Gennie V. Graham, Indv., Etc.
Donald E. Puckett, Baton Rouge, of counsel for defendant-appellee State of La. through the La. Health & Social & Rehabilitation Services Administration.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment rejecting her claims for damages for severe personal injuries inflicted upon her 12 year old son in a knife attack by William Robertson, following Robertson's escape from a mental institution known as State Hospital, located in Pineville, Louisiana (Hospital). The regrettable incident occurred in Baton Rouge, Louisiana, more than 100 miles distant from the Hospital, about midmorning August 3, 1973, after Robertson had fled the Hospital the previous night. The trial court found that the attack was clearly "unprovoked, illogical and unwarranted", but denied Appellant recovery on finding that the State's duty to protect the public from the risk of harm involved in the escape of a mental patient does not extend to one in Appellant's position. We affirm.
Robertson was first admitted to the Hospital in January, 1968, for treatment for mental disorder. From first admission until August 2, 1973, he was admitted or returned to the Hospital seven or eight times after having escaped in each instance. Hospital records and the testimony of Dr. *603 William L. Kirkpatrick, M.D. and Psychiatrist, disclose that Robertson was afflicted with chronic undifferentiated schizophrenia in that the patient exhibited symptoms of several forms of schizophrenia. He heard voices, saw visions, had delusions, had disturbed thought processes and was alternately friendly and hostile to those with whom he came in contact. Dr. Kirkpatrick, who had treated Robertson for several years, did not consider Robertson violent. He explained that while Robertson frequently threatened violence, he never carried out the threats. About 2 days prior to the August 2, 1973 escape, however, Robertson attacked hospital attendants and fellow inmates with a chair. He was placed in restraints consisting of leather arm bindings and leg irons apparently attached by leather thongs. The leg irons prevented him from running but allowed him to hobble or hop. He was placed in the institution's maximum security area, an unbarred room or dormitory with windows enclosed by louvers or shutters. The Hospital has no barred rooms or cells because the authorities in charge deem such an environment harmful to the best interests of patients who are received primarily for treatment for mental disorder rather than incarceration.
By means of a razor blade which Robertson either had concealed on his person or had obtained from a fellow inmate, Robertson freed himself from his restraints and fled the Hospital at night. The record does not establish the source of the knife with which Robertson attacked the Graham lad.
The rule governing liability of custodians of prisoners and inmates of public institutions is set forth in Green v. State, 91 So.2d 153 (La.App. 1st Cir. 1956), as follows:
"While the custodians of prisoners `may be held liable for injuries done to a third person by a prisoner in the course of an escape,' 72 C.J.S. Verbo Prisons § 23, i, p. 896; they `are not liable for injuries inflicted by an escaped prisoner, where the negligent or wrongful acts of such officials are not the proximate cause of the injuries,' 72 C.J.S. Verbo Prisons § 12, p. 865; citing Moss v. Bowers, 216 N.C. 546, 5 S.E.2d 826, 828, which held that the injury to the third person was not within the natural, probable, and foreseeable consequences of the alleged negligent acts which permitted the prisoner to escape, and that `the injury complained of is too remote to be referred to the negligence of the defendant as the proximate cause.'" See Annotation, 78 A.L.R. 471 at 476.
"An institution's duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or to release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received. The breach of the State's duty to continue the prisoner's incarceration thus should not be complained of by those injured through the escapee's negligent operation of a car. For the breach of the duty to be a proximate cause of the injury for which recovery is sought, the injury received should be one for the prevention of which the duty exists." 91 So.2d at 155.
In Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), our Supreme Court adopted the duty/risk analysis for determining tort liability which involves the following inquiries: (1) Was defendant's action a cause-in-fact of plaintiff's injurywas it a substantial factor in bringing about the harm; (2) Do the risk and harm encountered by plaintiff fall within the protection of a legal duty owned to plaintiff by defendant; (3) Was defendant negligenti. e., did defendant breach the duty owed plaintiff; and (4) Was plaintiff *604 damaged by defendant's conduct. See also Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). For plaintiff to recover, all four inquiries must be answered in the affirmative.
We pretermit consideration of the inquiries regarding cause-in-fact, negligence and resulting damage to plaintiff because we find the trial court correctly held that the State was not under a duty to protect plaintiff against the risk encountered in this instance.
The State's duty to protect the public from harm at the hands of escaped prisoners or inmates of public institutions does not extend to or encompass all harm which may be caused by such persons. Frank v. Pitre, 341 So.2d 1376 (La.App. 3d Cir. 1977); Green v. State Department of Institutions, 91 So.2d 153 (La.App. 1st Cir. 1956).
The extent or scope of protection afforded the public in cases of this nature has been considered on several occasions. The issue was first addressed in Cappel v. Pierson, 132 So. 391 (La.App. 2d Cir. 1931), which involved a death claim by the widow of a doctor who was shot by an inmate of the state insane asylum. The shooting occurred on the same day as the inmate's release by the superintendent of the institution. The court noted that the superintendent possessed discretion in ordering the release of an inmate and when such discretion was exercised in good faith, as was found, the releasing physician could not be held to have been negligent. Appellant seeks to distinguish Cappel on the ground that the court therein elected to give great weight to defendant's professional opinion. We note, however, that Cappel expressly held that the inmate's release was not the proximate cause of the doctor's death.
Frank, above, attempts to distinguish Cappel on the ground that the proximate cause issue was resolved in Cappel by the court's deferring to defendant's professional judgment. We believe, however, that the wisdom of a decision to release a patient has no bearing on the question of the remoteness of the injury from the questioned conduct. Such a decision concerns the question of negligence in permitting release rather than the consequences thereof.
Green, above, and Webb v. State, Department of Institutions, 91 So.2d 156 (La.App. 1st Cir. 1956), both decided the same day but with contrary results, are somewhat analogous to the case at hand. Green found that an escaped inmate's negligent operation of a stolen automobile was not the proximate cause of plaintiff's injury. Green also noted that the duty to restrain a convicted criminal is not based on the premise of protection of the public from all harm a prisoner might inflict if negligently allowed to escape. The court reasoned further that there is no more ground for holding the State civilly liable for a convict's general misconduct during the period of escape than for the same misconduct following legal release unless there exists further causal relationship than the release or escape to the injuries received.
It is apparent that release from a mental hospital is different from release from a penal institution in that the former situation directly involves a decision concerning the patient's ability to function outside the institution. The reasoning is the same, nevertheless, for determining the extent of the State's duty to protect the public. In the case of a mental patient, there is an additional inquiry of whether the institution was negligent in determining that the patient could be released without the risk of harm to the public.
On the other hand, Webb, above granted recovery to a plaintiff who lived near the State Penitentiary and who was shot by an escaped prisoner who was found to have been negligently allowed to escape with a weapon stolen from the prison. In imposing liability, the court in Webb noted the definite foreseeability that a prisoner negligently allowed to escape with a weapon would harm persons in the vicinity of the prison. The court also held that such injury was within the risk created by the negligence of the State's employees. In distinguishing Green, Webb noted:

*605 "In the case at bar, on the contrary, we do believe, as did the trial judge, that the inflicting of wounds on others in the course of escape by a convict through the use of a pistol made available by the negligence of State employees to be a most probable and reasonable foreseeable consequence of the original act or acts of negligence." 91 So.2d at 163.
More recent cases, Geiger v. State, Department of Institutions, 242 So.2d 606 (La.App. 1st Cir. 1970), and Walker v. Interstate Fire & Casualty Insurance Company, 334 So.2d 714 (La.App. 2d Cir. 1976), are not particularly helpful to a decision of whether the State's duty to protect from the risk of harm extends to this plaintiff, although said authorities deal with the issue. Both cases involve appellate reversal of trial court judgments sustaining exceptions of no cause of action. Geiger concerned the claim of the victim of a rape committed by escaped juveniles, the offense having been committed in the victim's home located about 500 yards from the institution. In Walker, a parish jail prisoner, with a history of criminal offenses, reputedly escaped with a rifle stolen from the jail. The escape was allegedly due to negligence of deputies in charge of the jail. The victim claimed that the escapee, on the day of escape, shot at plaintiff in her home in the same parish as the jail, and physically assaulted her. These authorities were concerned only with the question of whether plaintiffs' allegations, if substantiated at trial, could support a cause of action.
In determining the crucial question of whether Appellant is entitled to protection against the risk of harm attending the escape in question, we are guided by the following language appearing in Hill v. Lundin & Associates, Inc., above:
"The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. `All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.' Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956)."
We understand the foregoing language to mean simply that the extent of application of the duty/risk concept is a policy question to be decided by the courts except in those instances where the extent of the duty and the degree of protection intended is statutorily clear. We have no such guide in this instance. The hereinabove quoted jurisprudential rule establishing the duty of care as regards the escape of inmates from public institutions and the extent of protection thereby afforded does not extend the duty and/or protection to all persons under all circumstances.
We find that no duty was owed Appellant in this case and that the risk of harm intended to be protected against does not extend to the harm which befell Appellant. Despite threats to do so, Robertson had never before attacked anyone, except for the one noted incident which did not involve a weapon as such. The incident in question occurred several hours after escape and at a place more than 100 miles from the institution. We presume that Robertson armed himself with the knife after his escape. The attack, hours after escape, upon a 12 year old boy who was a complete stranger, in a city 100 miles distant from where Robertson was institutionalized, was so unforeseeable and unpredictable that to hold the incident within the risk of harm sought to be protected against would impose total, unqualified liability on the State for any harm caused by an escaped inmate *606 under any and all circumstances, irrespective of intervening time and distance. As a matter of policy, we are not prepared to extend liability to this degree. We find, therefore, that Appellant does not fall within the class of those afforded protection against the risk of harm involved in this instance.
The judgment is affirmed at Appellant's cost.
Affirmed.