506 So.2d 777 (1987)
Jimmy Wade SANCHEZ, as Natural Tutor of his Minor Daughter, Kimberly Darlene Sanchez
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH & HUMAN RESOURCES, C.A. Conway Memorial Hospital and State Farm Insurance Company.
No. 86 CA 0120.
Court of Appeal of Louisiana, First Circuit.
April 14, 1987.
John F. McKay, Brian D. Calvit, Baton Rouge, for plaintiff-appellant Jimmy Wade Sanchez, etc.
John Dale Powers, Joseph A. Schittone, Jr., Baton Rouge, for defendant-appellee State Farm Ins. Co.
Steven L. Mayer, Baton Rouge, for State of Louisiana, (DHHR), et al.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from the granting of a motion for summary judgment.

FACTS
The facts, as found by the trial court and with which we are in agreement, are as follows:
Edward Ingram had a long history of mental illness. In the early 1980's he was being intermittently treated by the E.A. Conway Memorial and the Monroe Regional Mental Health Center, both health care institutions under the direction and control of the Louisiana Department of Health and Human Resources. Mr. Ingram was diagnosed as a paranoid Schizophrenic. He was being treated on an outpatient basis by the Monroe Regional Health Center. Mr. Ingram was confined to the E.A. Conway Memorial Hospital on a number of occasions based on Physicians Emergency Certificates (P.E.C.) issued as a result of information presented by his wife Ruth. Plaintiff alleges Mr. Ingram exhibited violent tendencies. On different occasions Mr. Ingram, in his wife's presence, threatened to kill his wife, his parents, the pope, the president and said that all teenage girls should die. Mr. Ingram was last confined to the Conway Memorial Hospital based on a P.E.C. on November 16, 1982. He was discharged on *778 November 24, 1982. Subsequent to that time he was treated by the Monroe Health Center. Sometime in the second week of February 1983 (around February 10 or 11) Mrs. Ingram again initiated a P.E.C. to confine Mr. Ingram to Conway. However, the Sheriff's deputies could not find Mr. Ingram. It was later discovered that Mr. Ingram was in Florida. His brother went there and brought Mr. Ingram home, and he spent several days living with his brother and several more days with his parents. He visited his wife briefly on March 3, 1983 and on March 5, 1983 he entered his parents' home and shot and killed his sister Kathy Ingram Sanchez Landry and her husband Donald Leo Landry.
Jimmy Wade Sanchez, as natural tutor of his minor daughter, Kimberly Darlene Sanchez, brought this action against the State of Louisiana, through the Department of Health and Human Resources (The Department), C.A. Conway Memorial Hospital (C.A. Conway), Monroe Mental Health Center (Mental Health Center) and State Farm Insurance Company (State Farm) for the wrongful death of Kathy Ingram Sanchez Landry, natural mother of the minor child.
Sanchez alleged negligence on the part of the Mental Health Center and C.A. Conway for failing to properly recognize Edward Ingram's violent propensity. He further alleged that the Mental Health Center and C.A. Conway should have taken steps to confine or commit Edward Ingram to protect the public from his violence, and that, by negligently releasing Mr. Ingram in November of 1982, the hospital placed Mr. Ingram in a position where he could commit violent acts. By these acts of negligence, Sanchez alleged that C.A. Conway and the Mental Health Center exposed the public and Kathy Landry to Edward Ingram's violence.
Defendants filed an exception raising the objection of no cause of action and a motion for summary judgment. The crux of this exception and motion is that, if there was any negligence on the part of these defendants, it was not a cause in fact of Kathy Landry's death and, alternatively, that the duty owed by these defendants to confine Edward Ingram did not extend to the possibility that he would shoot and kill Kathy Landry.
By judgment dated December 9, 1985, the trial court granted defendants' motion for summary judgment and dismissed plaintiff's petition. From this judgment, plaintiff appeals, raising the following issues:
I. Does Louisiana law recognize that a mental health facility owes a duty to a third party for the negligent release and/or failure to recommit a patient with known violent tendencies?
II. Was the release and/or failure to recommit Ingram a cause-in-fact of the killing which occurred in March of 1983?
III. As a matter of law, does the duty of E.A. Conway, a mental institution who has released and/or failed to recommit a patient with known violent tendencies, extend to the risk that this patient would subsequently kill his sister and brother-in-law?

LIABILITY
The threshold issue before us is whether defendants owed a duty which included within the ambit of its protection the risk of injury suffered by Kathy Landry. Since the matter is before us on a summary judgment, we must review the pleadings, affidavits and depositions in the light most favorable to the parties opposing the motion for summary judgment to conclude whether there is no genuine issue as to material fact and whether the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Lytell v. Goodyear Tire & Rubber Co., 439 So.2d 542 (La.App. 1st Cir.1983); Robinson v. Estate of Haynes, 433 So.2d 294 (La.App. 1st Cir. 1983), writ denied, 438 So.2d 1112 (La. 1983).
In Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), the Supreme Court adopted the duty/risk analysis for determining tort liability which involves the following inquiries: (1) Was defendant's action a cause-in-fact *779 of plaintiff's injurywas it a substantial factor in bringing about the harm; (2) Do the risk and harm encountered by plaintiff fall within the protection of a legal duty owed to plaintiff by defendant; (3) Was defendant negligenti.e., did defendant breach the duty owed plaintiff; and (4) Was plaintiff damaged by defendant's conduct? For plaintiff to recover, all four inquiries must be answered in the affirmative.
In determining whether the risk of harm of being murdered by Ingram falls within the protection of a legal duty owed the deceased by defendants, we are guided by the following language appearing in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972):
The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. "All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises...." [256 So.2d at 623]
The state's duty to protect the public from harm at the hands of released or escaped prisoners and inmates of public institutions in similar situations has been considered by the courts on numerous occasions. See Jacoby v. State, 434 So.2d 570 (La.App. 1st Cir.1983); Ross v. Central Louisiana State Hospital, 392 So.2d 698 (La.App. 3rd Cir.1980); Graham v. State, Health and Social Rehabilitation Services Administration, 354 So.2d 602 (La.App. 1st Cir.1978); and Cappel v. Pierson, 15 La.App. 524, 132 So. 391 (2nd Cir.1931). The state's duty does not extend to or encompass all harm which may be caused by such persons. Frank v. Pitre, 353 So.2d 1293 (La.1977); Green v. State, Department of Institutions, 91 So.2d 153 (La.App. 1st Cir.1956).
In Green v. State, Department of Institutions, supra, this court stated:
An institution's duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or to release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received. [91 So.2d at 155]
While the purposes served by jails and penitentiaries (to provide pretrial and postconviction incarceration) are substantially different than the purpose of mental treatment facilities (to engage in an active effort to accomplish improvement in the mental condition or behavior of a patient), the rationale for determining the state's duty to protect the public from the actions of patients and inmates is the same.
In the instant case, after reviewing the pleadings, affidavits and depositions in the light most favorable to the party opposing the motion for summary judgment, we conclude, as did the trial judge, that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Pursuant to requests of his wife, Ingram had on numerous prior occasions been placed into defendants' care. While confined at C.A. Conway for observation and while undergoing treatment at the Mental Health Center, Ingram never displayed any violent tendencies. Ingram never threatened Kathy Landry or her husband or committed any type of violent act. The duty of C.A. Conway and the Mental *780 Health Center to care for and treat Ingram did not include within the ambit of its protection the risk that after being released he would, through his own unanticipated and independent actions, injure a third person.
Therefore, we find that the trial judge properly granted defendants' motion for summary judgment. Costs of this appeal are assessed against plaintiff, Jimmy Wade Sanchez.
AFFIRMED.