353 So.2d 1293 (1977)
Chester FRANK
v.
Elin PITRE, Sheriff of Evangeline Parish.
No. 59630.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*1294 Marion Overton White, White & Pitre, Opelousas, for plaintiff-appellee.
J. Wendel Fusilier, Fusilier, Pucheu & Soileau, Ville Platte, for defendant-appellant.
DIXON, Justice.
This application was granted to review the ruling of the Court of Appeal, 341 So.2d 1376 (La.App. 3d Cir. 1977), in awarding damages to a policeman who had suffered gunshot wounds in the performance of his duty. Plaintiff had been shot in attempting to quell a barroom disturbance by one L. J. Dick, who was killed in the melee. Dick was supposed to be a prisoner in the Evangeline Parish jail at the time. Defendant, Elin Pitre, was the custodian of the jail, and was cast in judgment.
Dick was a young man, recently returned on parole from Angola where he was serving a sentence for burglary. While on parole he was again arrested for burglary and was in jail on that charge and as a parole violator.
The courts below found that Dick had been permitted to leave the jail on the Saturday in question under a lenient policy of granting "passes" to certain prisoners. Testimony of deputies (Pitre did not testify) tending to establish that Dick escaped from the antiquated jail with a key they found in his bed was not believed.
Accepting the facts relied upon by the courts below to find the defendant negligent, we are unable to agree with their conclusion that there was sufficient causation between the negligence and the injury to cast the defendant. The Court of Appeal held that one of the main reasons to incarcerate a prisoner is to protect the public from him, and that it was a natural, probable and foreseeable consequence that Dick might intentionally injure someone if released.
*1295 A prisoner arrested for burglary is entitled to bail. Art. 1, § 18, La.Const.1974. The purpose for incarceration after arrest for a crime is to assure the presence of the accused for trial. Although a parolee does not have the constitutional right to bail, he may be admitted to bail within the discretion of the trial judge. Argro v. United States, 505 F.2d 1374 (1974); U. S. v. Schreiber, D.C., 367 F.Supp. 791 (1973). A parole violator is entitled to a quick "probable cause" hearing when charged with violating the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); R.S. 15:574.2-574.11. It is true that a parole officer may cause to be incarcerated a parolee suspected of a violation when the delay for a hearing might cause an undue risk to the public or to the parolee. There is no such evidence in this record. The probation or parole officer merely placed a detainer on Dick when he was jailed for burglary, apparently awaiting the conviction to commence revocation proceedings. (Dick had been in jail about a month when the shooting occurred). Since there was nothing in Dick's background to connect him with serious, violent crime, or with shooting, we cannot agree with the conclusion that one of the main purposes of the incarceration of Dick was to protect the public from intentional injury by him.
This case is not the first in which the liability of those charged with the custody of prisoners was at issue. In Green v. State of Louisiana, 91 So.2d 153 (La.App. 1st Cir. 1956), plaintiffs filed suit against the State for damages incurred when a fifteen year old inmate of a State institution escaped and negligently operated an automobile in such a fashion as to injure the plaintiffs. Defendant's exception of no cause of action was sustained by the trial court and the plaintiffs appealed. The First Circuit Court of Appeal affirmed the ruling, holding that even assuming the State employees to be negligent in allowing the prisoner to escape, as a matter of law, the acts were not the "direct, efficient and proximate cause of plaintiffs' injuries." Then Judge Tate, writing for the court, discussed the duty in the following manner:
"An institution's duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or to release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received.. . ." 91 So.2d at 155.
In a case decided by the First Circuit the same day as Green, Webb v. State of Louisiana, 91 So.2d 156 (La.App. 1st Cir. 1956), the plaintiff brought suit against the State alleging that the negligence of State employees allowed a prisoner to obtain a gun and escape. During that escape, the plaintiff was shot. The Court of Appeal affirmed the trial court's judgment in favor of plaintiff, noting that the inflicting of wounds during an escape was a "most probable and reasonable foreseeable consequence of the original act or acts of negligence." 91 So.2d at 163. See also Walker v. Interstate Fire & Casualty Insurance Co., 334 So.2d 714 (La.App. 2d Cir. 1976); Geiger v. State of Louisiana, 242 So.2d 606 (La. App. 1st Cir. 1970). One further case is instructive. In Cappel v. Pierson, 15 La. App. 524, 132 So. 391 (2d Cir. 1931), plaintiff brought a wrongful death action against the superintendent of the Central Louisiana State Hospital after an inmate of that institution killed her husband on the day of his release. The Court of Appeal affirmed the judgment in favor of the defendant on two grounds. First, the court stated that the defendant's good faith execution of his quasi-judicial, discretionary authority could not be questioned in a civil damage suit. Second, and more importantly for our purposes, the court held that even assuming the negligence of defendant in releasing the inmate, that negligent act *1296 could not be the basis of liability because it was not the proximate cause of the death of plaintiff's husband. The court, by quoting a passage from a North Carolina case, noted that the release of the inmate ". . . was a mere condition which accompanied but did not cause, the injury . . ." 132 So. at 392.
It is not enough to say that if Dick had not been released under the sheriff's policy of weekend passes, the tragedy would not have occurred. If Dick's friend had not given him a ride to town the shooting would not have happened. There must be something more; there must be a closer connection between the act of the defendant and the injury of the plaintiff. Although Professor Stone says, "Proximate cause as a theory in negligence cases appears to be out in Louisiana" (Stone, Tort Doctrine, 12 La. Civil Law Treatise 54), it may be that proximate cause survives, and influences judges to say there is no liability, even though a reasonable man might have concluded, if he had thought about it, that a prisoner allowed to go home on Saturday might have gotten into a brawl in a saloon and shot a policeman. Whatever the theoretical basis for liability is called, the claimed cause of the injury (the release of Dick) did not sufficiently contribute to the injury to create liability in defendant.
The judgment of the Court of Appeal is reversed, and there is now judgment in favor of the defendant, rejecting the demands of the plaintiff, at plaintiff's cost.
SANDERS, C. J., dissents for the reasons assigned by SUMMERS, J.
SUMMERS, J., dissents for the reasons assigned.
TATE, J., assigns concurring reasons.
TATE, Justice, concurring.
Assuming that the defendant sheriff violated some legal duty by affording the prisoner a weekend pass, this violation was not the proximate or "legal" cause of the plaintiff's injuries. For a defendant's violation of a duty to be a legal cause of an injury, his violation must not only be a cause in fact of (i. e., a substantial factor contributing to) the injury, but the duty violated must also have included within its purpose the prevention of the risk encountered by the plaintiff to his injury. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Robertson, Reason v. Rule in Louisiana Tort Law, 34 La.L.Rev. 1 (1973).
Here, as the majority correctly notes, the sheriff's duty to confine the person held for bailable charges plainly did not include within its scope the protection of third persons from injury should the prisoner be released, with or without bail. I would prefer to rest our conclusions solely upon this analysis of proximate ("legal") cause, rather than also upon the additional use of pre-Dixie principles enunciated by the majority.
SUMMERS, Justice (dissenting).
Plaintiff Chester Frank instituted this suit in tort against Elin Pitre, Sheriff of Evangeline Parish. A cause of action is asserted based upon allegations of injuries incurred by Frank when he was shot and seriously wounded by L. J. Dick shortly after midnight on September 12, 1971. At the time L. J. Dick was alleged to be on temporary leave from custody in the Evangeline Parish prison by virtue of the sheriff's orders.
After a bench trial judgment was rendered in favor of the plaintiff Frank against the defendant Pitre for $41,004, with interest and costs. On appeal to the Third Circuit the judgment was affirmed. 341 So.2d 1376 (1977). Certiorari was granted on defendant's application. 345 So.2d 53 (La.1977).
In important particulars the facts are disputed. In these instances the credibility of witnesses was at issue and the factual determinations were resolved in favor of plaintiff by the trial court and the Court of Appeal. A review of the record discloses evidence to support these determinations. Under these circumstances, finding no manifest error and being aware of the trial *1297 judge's favored position where questions of credibility are involved, these conclusions are accepted.
On September 11, 1971 L. J. Dick was incarcerated in the Evangeline Parish jail situated in the Town of Ville Platte. He had been confined there when, about five weeks before, on August 5, 1971, he was arrested by the city police on charges of simple burglary and theft. At the time of his arrest he had just been released on parole from the State Penitentiary at Angola after serving twenty months of a five-year sentence for a conviction of burglary and forgery. He was then under supervised probation, and upon learning of his arrest and incarceration the probation officer assigned to his case filed a detainer with the sheriff on August 16.
During his incarceration in the parish jail it was the stated policy of the sheriff as custodian of the prisoners to grant passes to misdemeanants with the admonition to go home, remain there and not be seen or make trouble. Parole violators in custody under this policy were not supposed to leave jail without the permission of the probation officer. However, on some occasions even multiple offender felons were permitted to go out on passes, and, at least in this case, a parole violator was given the leave privilege contrary to the stated policy.
The policy was rather loosely administered. There were no formal written passes or log entries made of the prisoner's departure or return; nor was the policy or practice reduced to writing in a set of orders or regulations. While acknowledging that there was no legal authority for the policy or practice, the chief deputy testified that "the sheriff has taken it upon himself to grant passes . . . ." It was not uncommon under these conditions for the city police to arrest and return prisoners who had breached the peace while at liberty on passes.
On September 11, 1971 the parish jail was old and not well maintained. The locks were in such disrepair that chains and padlocks were used on some doors to provide a measure of security. Although it may have been feasible for the prisoner L. J. Dick to escape from confinement because of the jail's condition and the lax security measures, as the sheriff contends, the trial judge found, and the Court of Appeal agreed, that Dick was allowed to go home for the weekend on this Saturday morning about 11:30. This finding is consistent with the failure of the sheriff's office to send out an alarm or make any effort to find the prisoner and return him to custody after learning of his absence from the jail about one o'clock that afternoon. Significantly, the probation officer was not advised of Dick's release from confinement.
When Dick left the jailhouse on September 11, 1971, he met another prisoner, Rayfield Jackson, on the streets of Ville Platte. Jackson too had been allowed to leave prison for the week-end. Together they obtained a ride part-way to Jackson's house in a rural area. While there they ate, Jackson changed clothes, and they watched television until 4:30 that afternoon. A neighbor then gave them a ride back to Ville Platte. They arrived at "Will Jack", a saloon, where they remained a short while until they decided to go to L. J. Dick's mother's house about three blocks away. There they again ate and watched television. About 7:30 that evening L. J. Dick changed clothes at his sister's house nearby and they returned to the "Will Jack" saloon. Two cousins of L. J. Dick's there gave them a ride to the "Wood", a section of town where several saloons, lounges and dance halls were situated. After frequenting one or two of these establishments, they arrived at "Happy Landing", a saloon and dance hall. Drinking continued there with girls and other friends.
In the course of the activity, Dick got into an argument with Sidney Gallow. A fight was about to take place when Chester Frank, the plaintiff, intervened. Frank was then on duty as a city policeman. In order to avoid a situation which would require arrest and incarceration of Dick and Gallow, Frank broke up the confrontation and led Gallow outside.
Dick returned to his companions of the evening. At that time Jessie Sims, the *1298 floor walker at the Happy Landing, who had assisted Frank in quieting the disturbance between Dick and Gallow, was in the process of quelling another threatened fight when, without provocation or warning, he was struck a vicious, stunning blow to the head by Dick. When he fell unconscious to the floor, Dick grabbed the handgun from his holster and bounded toward the door of the hall as the onlookers scattered.
Dick arrived at the door just as Frank, who had been talking to Gallow across the street, was walking back to the hall. As Frank approached the door Dick shot him three times. Another officer nearby then shot and killed Dick. Frank was seriously injured and permanently disabled as a result of the three gunshot wounds. This suit followed.
Courts of this State have recognized that the operation of a prison in such a manner that it creates a risk, danger, nuisance or cause of harm to another constitutes actionable negligence. It is said in these cases that recovery may be permitted based upon a finding that the sheriff or other custodian of prisoners is negligent in permitting a prisoner to escape or allowing him to leave custody without proper lawful authorization, where the act of the prisoner is a foreseeable consequence of permitting him to escape, and where such negligence is the proximate cause of injuries which result to others. Geiger v. State, 242 So.2d 606 (La. App.1970); Webb v. State, 91 So.2d 156 (La.App.1956); Green v. State, 91 So.2d 153 (La.App.1956). The same is true of other jurisdictions. See State v. Silva, 86 Nev. 911, 478 P.2d 591 (1970); Moss v. Bowers, 216 N.C. 546, 5 S.E.2d 826 (1939); West Virginia v. Fidelity & Casualty Co., 263 F.Supp. 88 (D.C.W.Va.1967); 44 A.L.R.3d 899. The principle has been recognized since 1897. See Henderson v. Dade Coal Co., 100 Ga. 568, 28 S.E. 251. Some jurisdictions have recognized that officers who are at fault are criminally responsible for escapes by those entrusted to their custody. Barthelow v. State, 26 Tex. 175 (1862). Such a result appears to be based upon the principle that allowing the departure of a prisoner voluntarily or negligently is an offense against public justice and authority. 30A C.J.S. Escape.
In the instant case the trial judge and Court of Appeal based recovery upon a finding that L. J. Dick was, "without question", a man of violent propensities. Although most witnesses agreed that Dick seldom made use of weapons, it was generally recognized by those who knew him that Dick was a "fighter" who had been cited for breach of the peace on numerous occasions. The sheriff and his deputies had knowledge of Dick's propensities as a fighter. As already pointed out, Dick had recently returned from serving a sentence at the state penitentiary on a simple burglary and forgery conviction when he was again apprehended on charges of simple burglary and theft. The sheriff knew that he was awaiting trial on the latter charges and that a detainer had been issued charging him as a parole violator. In addition, the officials in charge of the jail knew that Dick had been arrested on a number of occasions in the past for disturbing the peace and fighting.
On the basis of these findings I agree that it was negligence on the part of the sheriff to adhere to a practice which allowed prisoners with violent propensities and with records of former convictions to leave the jail for the week-end. Especially it was negligence when, as here, no supervision or restriction on the prisoner's activities while on leave was enforced or insisted upon. Such negligence was therefore a breach of the sheriff's duty to maintain a proper restraint upon prisoners lawfully confined and entrusted to his custody, for he is charged by law as the keeper of the public jails of his parish, La.Rev.Stat. 33:1435, 15:704, and as such he is responsible for the safe custody of inmates in the parish jail.
I am, moreover, of the opinion that a duty is owed by the sheriff as keeper of the jail to those who may suffer harm as a result of negligently allowing a prisoner of violent propensities to leave confinement without adequate supervision or restraint.
*1299 Considering a person with L. J. Dick's record and reputation the sheriff could reasonably anticipate that he would frequent the saloons and dance halls of the town, as he had before, and become involved in the disputations and violent encounters which had characterized his past activity. Dick had been in fights in this neighborhood on prior occasions, and his brother had been killed in the Rainbow Inn, an establishment near the Happy Landing dance hall and saloon. Dick had used a weapon on at least one previous occasion, when, two years previously, he threatened Officer Frank with a knife as Frank attempted to intercede in a fight in which Dick was involved. As a result, Dick was charged with disturbing the peace. Dick was six feet tall and weighed 200 pounds, and his reputation as a fighter in public places should have alerted any reasonably cautious officer to the probability that weapons would eventually play a part in these offenses against the law. Consequently, harm to others was reasonably foreseeable.
It is pertinent to note also that the harm which befell Officer Frank was not the result of negligence or passive action on the part of Dick, a circumstance which may have relieved the Sheriff of responsibility where the negligence was unrelated to the risk involved in the prisoner's release. Cf. Green v. State, 91 So.2d 153 (La.App.1956). Instead Officer Frank's injuries were a natural, probable and foreseeable consequence of Dick's release from prison followed by his intentional, violent and unprovoked conduct. The injuries which resulted to Frank following Dick's release from custody fell within the scope of the protection owed by the sheriff under the facts and circumstances of this case. These injuries were also the natural, probable and proximate consequence of the sheriff's breach of his duty to maintain custody of L. J. Dick, consequences which should have and could have been anticipated and foreseen. Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972).
I respectfully dissent.