364 So.2d 254 (1978)
Lee GUILLOT and Doris Guillot, Plaintiffs and Appellants,
v.
STATE of Louisiana, Through the LOUISIANA STATE POLICE and the Louisiana Department of Public Safety, Defendant and Appellees.
No. 6657.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Rehearing Denied November 28, 1978.
Writ Refused January 19, 1979.
Riddle, Bennett & Ryland by John T. Bennett, Marksville, for plaintiffs and appellants.
Foye L. Lowe, Jr., Baton Rouge, for defendant and appellees.
*255 Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CULPEPPER, Judge.
Plaintiffs, Lee and Doris Guillot, filed this suit for damages for the wrongful death of their son, John William Guillot. They allege that, while operating a motorcycle, he was struck and killed by a vehicle negligently driven by Allen J. Bonnette. The defendants, (1) the State of Louisiana, through the State Police and (2) the Department of Public Safety, are sued on the basis that due to Bonnette's prior convictions for driving while intoxicated, the defendants should have taken away his driver's taken away his driver's license and his vehicle license plates. Defendants excepted to the suit on the ground that the plaintiffs failed to state a cause of action. The district judge sustained the defendant's exception and dismissed the suit. From this judgment, the plaintiffs appeal.
The decisive issues are: (1) Did the Department of Public Safety have a statutory duty to issue an order to the Louisiana State Police to pick up either Bonnette's driver's license or his vehicle license plates? (2) Assuming, as plaintiffs allege, that the Louisiana State Police were negligent in failing to pick up Bonnette's driver's license, after being ordered to do so on February 2, 1977, was this a legal cause of the death of plaintiffs' son?
The allegations of plaintiffs' original and supplemental petitions, which, for purposes of the exception of no cause of action, must be accepted as true, are as follows: Their son was traveling on a motorcycle in a westerly direction when the accident occurred. According to the petition, Allen J. Bonnette, who is not a party to this suit, was proceeding in an automobile in the opposite direction along the same road when he turned into the path of the motorcycle and thereby caused the collision and subsequent death of Guillot. Plaintiffs allege that as of the date of the accident Bonnette had been convicted of driving while intoxicated on three separate occasions. Their original and supplemental petitions contain the following allegations of negligence and causation:

"8(b).
"That according to Louisiana law, the Department of Public Safety was required prior to this accident to issue an order to the Louisiana State Police ordering them to take away his driving privileges which included the taking of his license and license plates on his vehicle.

* * * * * *

"9.
"That through inadvertence or negligence, the Department of Public Safety failed to issue such an order which failure resulted in Allen J. Bonnette being on the road on the date and at the time of the accident, said failure to issue the said order was the proximate cause of the accident in the following respects:
"(a) That under the statute cited hereinabove the law provided that the license of Allen J. Bonnette shall be revoked;
"(b) That upon conviction on September 2, 1976 while driving while intoxicated became the duty of the Department of Public Safety to issue an order to the Louisiana State Police to pick up the driver's license of Allen J. Bonnette;
"(c) That on February 2, 1977 an order was issued by the Department of Public Safety to the Louisiana State Police to pick up his driver's license;
"(d) That in neglecting to issue this order prior to February 2, 1977 the Department of Public Safety was negligent and said negligence proximately caused the accident;
"(e) That in addition by failing to pick up the driver's license of Allen J. Bonnette after receiving an order on February 2, 1977 the State of Louisiana through the Louisiana State Police was negligent which negligence proximately caused the accident.
* * * * * *

*256 "10(a).
"That the accident in question occurred on April 10, 1977 at 3:55 p. m.; that according to the records of the Department of Public Safety an order was issued by the Department of Public Safety to the Louisiana State Police on February 2, 1977 to pick up the driver's license of Allen J. Bonnette.
* * * * * *
"10(b).
"That if in fact his license had been picked up within this period of time it is more probable than not that Allen J. Bonnette would not have been driving upon the roads of Louisiana on the date and at the time in which the accident occurred that is April 10, 1977, and the accident and the death of John William Guillot would not have occurred."
DID DEPARTMENT OF PUBLIC SAFETY HAVE STATUTORY DUTY TO ISSUE ORDER TO STATE POLICE TO PICK UP LICENSE?
In both their petitions and in their brief, plaintiffs argue that in those cases in which LSA-R.S. 32:414 makes the revocation or suspension of an individual's license mandatory, the law of Louisiana requires that the Department of Public Safety issue an order to the state police to physically seize the individual's driver's license and his vehicle license plates. We find no such requirement in either the statutes or the jurisprudence.
LSA-R.S. 32:414(B)(2) mandates the revocation for twelve months of the driver's license of an individual upon that individual's second or subsequent conviction of driving while intoxicated. Therefore, in the instant case, the Department of Public Safety was under a positive duty to revoke Bonnette's driver's license. However, the statute does not place a duty upon any state agency to seek out the motorist and take actual physical possession of his driver's license or his vehicle license plates. Instead, LSA-R.S. 32:414(E) provides that upon cancellation, revocation or suspension of any person's license the Department of Public Safety shall send written notice to that person of such cancellation, revocation or suspension and that such person must return his driver's license within five days. LSA-R.S. 32:414.1 (1 and 4) declare it to be unlawful for any person to have in his possession any canceled, revoked or suspended license or to fail or refuse to surrender to the department any canceled, revoked or suspended license.
In these statutes, the legislature imposes no affirmative duty on the State beyond the mailing of the notice of suspension, revocation or cancellation. Instead, these statutes impose a duty on the individual, upon notice of revocation by the department, to surrender his license under penalty of punishment. We conclude the Department of Public Safety had no statutory duty to issue an order to the state police to pick up either Bonnette's driver's license or his vehicle license plates. Thus, plaintiff's allegations of negligence, based on the department's failure or delay to issue such an order, do not state a cause of action. Plaintiffs do not allege any negligence by the department in failing or delaying to notify Bonnette of the revocation of his license.

FAILURE OF STATE POLICE TO PICK UP LICENSE
The next issue is, assuming the Louisiana State Police were negligent, as plaintiffs allege, in failing to pick up Bonnette's driver's license, was such negligence a legal cause of the death of plaintiffs' son?
In Frank v. Pitre, 353 So.2d 1293 (La. 1977), the plaintiff, a city policeman, filed suit against the sheriff of Evangeline Parish for personal injuries caused by gunshot wounds which he suffered while attempting to quell a barroom fight. The plaintiff had been shot by L. J. Dick, who was supposed to be a prisoner in the Evangeline Parish jail at the time of the accident, but who had been released by the sheriff on a "week-end pass", for which the sheriff had no authority. The Supreme Court of Louisiana refused to hold the sheriff liable for the injuries to the plaintiff. The majority opinion, *257 signed by four justices, found there was not a sufficiently close connection between the release of the prisoner and the injury to plaintiff. Stating that the theory of "proximate cause" may still survive in Louisiana, the majority said:
"Whatever the theoretical basis for liability is called, the claimed cause of the injury (the release of Dick) did not sufficiently contribute to the injury to create liability in defendant."
In a concurring opinion, Justice Tate stated he preferred to use the duty risk analysis, under which he concluded that the harm to the plaintiff was not within the scope of protection of the duty breached by the defendant. He states:
"For a defendant's violation of a duty to be a legal cause of an injury, his violation must not only be a cause in fact of (i. e., a substantial factor contributing to) the injury, but the duty violated must also have included within its purpose the prevention of the risk encountered by the plaintiff to his injury. (Citations omitted.) "Here, as the majority correctly notes, the sheriff's duty to confine the person held for bailable charges plainly did not include within its scope the protection of third persons from injury . . . ."
The allegations of the petition in the instant case are analogous to the facts of Frank. In Frank, the plaintiff contended that if the sheriff had not breached his duty in issuing the pass, the prisoner would not have been in the bar on that particular night, and the injuries to the plaintiff would not have occurred. Frank contended further that a purpose of the sheriff's duty to confine his prisoners was to protect third persons from injury by the prisoners. In the instant case, the plaintiffs have alleged that if the state police had picked up Bonnette's license, Bonnette would probably not have been driving an automobile on the day of the accident and the injuries to their son would not have occurred. Under a duty risk analysis, this may satisfy the cause in fact requirement. But, plaintiffs do not allege that a purpose of the duty to pick up the license was to protect third persons from injury by Bonnette's driving. Thus, the allegations do not expressly satisfy the duty-risk requirement that the injury be one which the duty breached sought to protect against. See Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970).
We conclude the trial judge was clearly correct in deciding this case under the rationale of Frank v. Pitre, supra. If we use the "proximate cause" rationale of the majority opinion in Frank, the failure of the state police to pick up Bonnette's driver's license did not sufficiently contribute to the death of plaintiffs' son to create liability in the State. Also, if we use the duty-risk analysis, as did Justice Tate in his concurring opinion, the purpose of any duty imposed on the state police to pick up Bonnette's driver's license did not include within its scope the protection of third persons from injury by Bonnette's driving.
Keeping in mind that there was no statutory duty by any state agency to pick up the license, and that the only duty being discussed here is that alleged by plaintiff as arising out of an order by the Department of Public Safety to the State Police to pick it up, we think the obvious purpose of this order was to enforce the statutory penalty that Bonnette surrender the license. The purpose of revoking Bonnette's license was to inflict on him a punishment for his convictions of driving while intoxicated. These were criminal offenses, and the revocation of the license was a part of the penalty.
Essentially, what the plaintiffs in this case are contending is that the State's failure to enforce a punishment for violation of a criminal statute caused the death of their son. The answer to this is that although the State has a duty to enforce its criminal laws, it is not liable for damages to individuals injured by the criminal acts of others or by the State's failure to punish those criminal acts. To hold otherwise would, in effect, obligate the State to compensate the victims of crime. Louisiana has not adopted such a law.
The only cases we find from other states support our conclusion. A New York court, *258 faced with an almost identical fact situation, Chikofsky v. State, 203 Misc. 646, 117 N.Y.S.2d 264 (1952), refused to find a cause of action against the state on two grounds. First, the court concluded that neither the state nor municipalities were liable in damages to individuals for omission to perform a public duty. Secondly, the court found no "proximate cause" between the failure of the state to seize the license and the personal injuries of the plaintiff. In a later case, Brumby v. State of N. Y., 14 Misc.2d 592, 180 N.Y.S.2d 71 (1958), the New York bureau of highways had sent a notice of revocation to an individual ordering the surrender of the automobile's license plates. The individual failed to do so and subsequently injured the plaintiff through negligent driving. The court refused to allow the plaintiff to recover against the state, concluding that the "crux" of the case was a lack of "causation" between the plaintiff's injuries and the state's failure to seize the plates. See also Guy v. State, 50 Misc. 29, 269 N.Y.2d 504 (1966) and 79 A.L.R.3d 963. Despite the use of the proximate cause analysis, these cases illustrate the aversion of the New York courts to hold the state liable for injuries caused by drivers whose licenses had been revoked but not surrendered or picked up.
In a supplemental brief, plaintiffs argue that the recent case of Boyer v. Johnson, 360 So.2d 1164 (La.1978) supports their position. In Boyer, defendant employed plaintiff's 15-year-old son to drive a commercial motor vehicle in violation of a criminal statute, LSA-R.S. 23:161(10). In holding the defendant employer liable to the parents for the death of the boy while operating the vehicle, the court found that the employer's violation of the criminal statute was a cause in fact and that the purpose of the statute was to protect against the risk of injury to minors. We find the Boyer case is distinguished from the present matter. In the first place, there was no violation of a criminal statute by the defendants herein. Furthermore, for the reasons stated above, the duty breached, if any, did not seek to protect against the injury suffered.
For the reasons assigned, the judgment appealed is affirmed at appellants' cost.
AFFIRMED.