Stella Jackson BALTEZORE, wife of Donald Baltezore, Plaintiff-Appellant,

v.

CONCORDIA PARISH SHERIFF'S DEPARTMENT, et al., Defendants-Appellees.

No. 84–4591.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1985.

Rehearing Denied Sept. 4, 1985.

Johnson, Ritzie, Taylor & Thomas, Ernest L. Johnson, Baton Rouge, La., James A. Dunn, Jr., New Orleans, La., for plaintiff-appellant.

Sturgeon, Gore & Gremillion, Brent S. Gore, Ferriday, La., for defendants-appellees.

DeWitt T. Methvin, Jr., Alexandria, La., for Concordia Parish Sheriff.

Before CLARK, Chief Judge, RANDALL and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In the facts of this appeal a deputy sheriff shot and killed an arrestee while transporting him to a county jail. The plaintiff, the arrestee's widow, brought suit against the sheriff's department and certain officers under 42 U.S.C. § 1983 and state law. The defendant officers asserted that the arrest was valid and that the shooting was justified under the circumstances. The jury found the arrest unlawful and assessed punitive damages against the sheriff, but returned a verdict favorable to the defendants in most other respects, including an award of damages to the deputy on his counterclaim. Both the plaintiff and the defendants filed post-trial motions for judgment notwithstanding the verdict or new trial. The district court denied the motions, but offered the plaintiff and the deputy remittiturs of their damage awards or a new trial on damages alone. Both parties accepted the remittiturs. Primarily challenging the sufficiency of the evidence, the plaintiff argues on appeal that the district court erred in denying her motions for judgment notwithstanding the verdict or new trial. We affirm.

I

In June 1981, Donald Jerome Baltezore was arrested on a forgery warrant by officers of the Concordia Parish, Louisiana, Sheriff's Department. Shortly after his arrest, Baltezore was released on his own recognizance.

On July 2, 1981, Johnny Patrick, Sheriff of Concordia Parish, instructed two deputies, Doyle Morace and William Frasier, to arrest Baltezore, although no new charges had been filed nor had Baltezore's bond been properly revoked. Pursuant to those instructions, Deputies Frasier and Morace arrested Baltezore at a tavern in Ferriday, Louisiana. Deputy Frasier carried out the arrest by handcuffing Baltezore, placing him on the front passenger seat of his patrol car, and driving to the parish seat in Vidalia, Louisiana. Deputy Morace followed in a separate patrol car. On the way to Vidalia, an incident occurred between Deputy Frasier and Baltezore, resulting in Baltezore's death. The facts surrounding this incident are fiercely disputed. Frasier contends that Baltezore, who was handcuffed with his hands in front of his body, pulled a knife and attacked while Frasier was driving the patrol car. Frasier testified that in the ensuing struggle he managed to draw his service revolver and shoot Baltezore in self-defense. The plaintiff, Stella Jackson Baltezore, Donald Baltezore's widow, contends that Frasier did not shoot in self-defense, but with premeditation shot Baltezore with the intent to kill. She asserts that Baltezore did not attack Frasier and that the knife found in Frasier's patrol car was placed there by the defendants or some unknown person. It is undisputed that Frasier's patrol car abruptly exited a highway approximately two miles from the Vidalia city limits, and came to rest in a muddy soybean field. There also is no question that Frasier shot Baltezore six times with his service revolver, and that Deputy Morace took Frasier to the hospital shortly after Frasier's patrol car came to rest in the soybean field.

As a result of the shooting, Stella Baltezore, individually and as executrix of Don-

ald Baltezore's estate, filed suit in district court under 42 U.S.C. § 1983 and state law to recover for Baltezore's death. She alleged that Deputies Morace and Frasier, and Sheriff Patrick illegally arrested and searched Baltezore, and that the shooting was unreasonable under the circumstances, thus depriving Baltezore of life and liberty without due process of law in violation of the fourteenth amendment. The plaintiff also alleged that the deputies were liable under state negligence law for failing to follow standard police procedures in arresting and searching Baltezore, which created a "zone of danger" leading to Baltezore's death. The defendants contended at trial that the arrest was proper and that the use of deadly force to resist the attack by Baltezore. was reasonable. In addition, Deputy Frasier counterclaimed against Baltezore's estate for injuries sustained in the struggle with Baltezore.

At trial, the district court directed a verdict against the plaintiff on her state law negligence claim at the conclusion of the evidence. The plaintiff's other claims were submitted to the jury. The jury made the following findings by way of special verdict: (1) Baltezore was unlawfully arrested; (2) Deputy Frasier used only such force as was reasonably necessary under the circumstances to protect himself from grave bodily injury; and (3) Baltezore unlawfully assaulted Deputy Frasier. The jury awarded $1 million in punitive damages but no compensatory damages against Sheriff Patrick for the unlawful arrest.[1] No compensatory or punitive damages were assessed against Morace or Frasier for the unlawful arrest. The jury awarded Deputy Frasier $500,000 in compensatory damages on his counterclaim against Baltezore's estate for injuries received in Baltezore's at-

tack. The district court remitted the $1 million punitive damage award against Sheriff Patrick to $50,000.[2] The plaintiff accepted the remitted award under protest. The district court also remitted Frasier's $500,000 compensatory damage award to $33,500. The court found the award to Frasier to be "palpably excessive" and held the maximum amount the jury could reasonably award was $3,500 for pecuniary loss and $30,000 for pain, suffering and mental anguish. Deputy Frasier accepted the remitted award without protest. Only the plaintiff appeals.

## II

The primary issues on appeal concern whether the jury verdict is supported by the evidence. The plaintiff contends that the district court abused its discretion in denying her motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the following issues: (1) the liability of Morace and Frasier for the unlawful arrest;[3] (2) the liability of Morace and Frasier for the unlawful killing of Baltezore; (3) the propriety of the compensatory damage award to Frasier; (4) the court's failure to award the plaintiff compensatory damages against Sheriff Patrick for the unlawful arrest; and (5) the admission into evidence of the knife allegedly used by Baltezore to attack Frasier. The plaintiff also contends that the district court erred in directing a verdict against her on her state law negligence claim, and abused its discretion in remitting the punitive damage award against Patrick for the unlawful arrest.

## III

Before addressing these issues, we take time to set forth the familiar standard for

---

**1.** Sheriff Patrick does not appeal the finding of liability and assessment of punitive damages against him for the unlawful arrest of Baltezore.

**2.** The court reasoned that the award of $1 million in punitive damages was "grossly and outrageously excessive," especially when considering that the jury awarded no compensatory damages and that the death of Baltezore was not involved in the damage award.

**3.** The plaintiff's claim of unlawful arrest is accompanied by allegations of unlawful search, unlawful imprisonment and aggravated battery. The jury was instructed, without objection, to decide only whether the arrest was unlawful. Thus we treat these additional allegations as being part of the claim for unlawful arrest.

reviewing motions for judgment notwithstanding the verdict. The court should consider all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. *Boeing v. Shipman Co.*, 411 F.2d 365, 374 (5th Cir.1969).

## A.

With this standard as our backdrop, we turn now to perhaps the central issue in this appeal—whether the evidence supports the jury finding that the force used by Frasier was reasonable under the circumstances. Our review of the record reveals substantial evidence in support of the jury in this respect. It is necessary to set forth only a portion of the evidence and testimony to support our conclusion.

Daniel Edwards, an eyewitness, testified that he heard gunshots and saw a struggle in Frasier's patrol car. He watched the car exit the road, cross an embankment, and enter a muddy soybean field. He observed Deputy Frasier, with bloodstains on his shirt, walk away from the car and fall to the ground. Deputy Morace, who had parked on the side of the road, ran to Frasier's car, looked inside, and then took Frasier to the hospital. Edwards went to Frasier's patrol car, briefly looked inside and saw Baltezore sitting on the front seat.

Irving Stone, Chief of the Physical Evidence Section at the Institute of Forensic Sciences in Dallas, Texas, was accepted by the court as an expert in firearms examination, gunshot residue, and bloodstain interpretation. Based upon his examination of various reports, photographs and evidence from Frasier's car, he testified that Baltezore was sitting on the front passenger seat of the car, facing toward the driver's seat, with his left foot up on the seat, and with his right foot down on the floor board. Photographs introduced into evidence showed Baltezore's body positioned in the car consistent with Stone's testimony, and revealed cuts in the upholstery of the driver's side of the front seat. Stone concluded that it would be most logical to assume that there was a struggle and an attempt by Baltezore to stab Deputy Frasier.

Dr. Ronnie Gregg, a general surgeon, treated Frasier on the day of the shooting. He stated that Frasier had elevated blood pressure and pulse at the time of his examination and appeared to be frightened. Frasier received two stab wounds, one in the right side of his chest, and the other in the lower abdomen. Upon probing the chest wound, Gregg found it to extend from the side to the posterior, approximately six to eight inches deep, although not penetrating the chest wall.[4] The abdominal wound was shallow and superficial, estimated by Gregg to be one-half to one inch deep. A small laceration on the back of Frasier's left wrist was also observed. Photographs introduced at trial showed Frasier in the hospital with bandages on cuts to his body.

Dr. William T. Polk, the Concordia Parish coroner, arrived at the scene shortly after the shooting occurred. He found Baltezore in the same position described by Irving Stone. Dr. Polk also observed a knife scabbard in Baltezore's right boot, and saw a knife on the floorboard. He identified the knife shown to him at trial as the one he had observed in Frasier's car.

▬▬ Concordia Parish Deputy Sheriff Robert Bruce, a crime scene investigator and photographer, testified that he found Frasier's vehicle resting in a soybean field near the outskirts of Vidalia. He saw blood and a knee impression in the mud approximately twenty-two feet northeast of Frasier's vehicle, and believed someone had

---

**4.** At first blush, a six-to-eight-inch deep wound to the chest, not penetrating the chest wall, is difficult to understand. Dr. Gregg explained in some detail, however, that the wound began at the side of the chest at the point where it curves or bends, and extended through to Frasier's back. He carefully explained that this was a stab wound that could have been deadly had the knife entered the chest directly.

stumbled and fallen into the mud. He observed Baltezore sitting in the car with his left leg on the seat and his right leg on the floorboard. He also saw a knife in the car, and identified the knife at trial as being the one he had observed in Frasier's car.[5]

Patrick Lane, a forensic scientist with the Louisiana State Police Crime Laboratory, stated that he observed a knife in Frasier's vehicle on the floor, and that a knife scabbard was recovered from Baltezore's right boot at the time of the autopsy. Lane testified that from his investigation he found nothing inconsistent with the theory set forth by Frasier, i.e., that Frasier was transporting a prisoner who was handcuffed with his hands in front, the prisoner tried to stab Frasier while the car was moving, Frasier had to release the steering wheel and shoot his assailant in self-defense.

Sergeant James R. Pease of the Louisiana State Police noticed Frasier's car resting in the soybean field with weeds and other green plants lodged in the car's front grill. He described car tracks leading from the highway into the field, and testified that the car appeared to have hit an embankment. He discovered bullet fragments and bits of hair and flesh in the front area of the car, and a fillet knife on the floorboard. From his investigation, he found no evidence of a conspiracy to kill Baltezore, and concluded that Frasier shot in self-defense.

■ In view of this evidence and other testimony not detailed here, there is no question the jury reasonably could have found, as it did, that Baltezore unlawfully assaulted Deputy Frasier and that Frasier used no more force under the circumstances than necessary to defend himself. It naturally follows that if the force used by Frasier was reasonable, Sheriff Patrick and Deputy Morace also are not liable for Baltezore's death.

■ The jury awarded Frasier $500,000 for damages resulting from Baltezore's attack, which the district court remitted to $33,500. The plaintiff contends that the remitted award was excessive because the district court could properly award no more than $10,000, the amount requested by Frasier in his counterclaim. This contention is clearly without merit because it has long been settled that federal courts are not bound by the pleadings and may fashion any relief appropriate under the circumstances. *Brown v. Burr-Brown Research Corp.*, 378 F.2d 822, 824 (5th Cir.1967); Fed.R.Civ.P. 54(c).

### B.

The plaintiff next argues that the court erred in failing to grant her motion for judgment notwithstanding the verdict or new trial on the question of Morace's and Frasier's liability for unlawful arrest. She contends that the jury found the arrest to be unlawful, but inconsistently assessed no compensatory or punitive damages against Frasier and Morace.

■ Although a new trial is required if one critical answer in a special verdict is inconsistent with another, we are required to search for a view of the case that makes the jury's answers consistent and adopt that view if at all possible. *Mercer v. Long Manufacturing N.C., Inc.*, 665 F.2d 61, 65 (5th Cir.1982); *Morrison v. Frito Lay, Inc.*, 546 F.2d 154, 160 (5th Cir.1977); *Gonzales v. Missouri Railroad Co.*, 511 F.2d 629, 633 (5th Cir.1975). As expressed in *Griffin v. Matherne*, 471 F.2d 911 (5th Cir.1973):

> [T]he test ... is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the

**5.** The plaintiff argues that the chain of custody for the knife was not proven by the defendants and therefore the court erred in admitting it into evidence. The plaintiff's argument is without merit. Under most circumstances, as here, the question whether the proponent of evidence has proven an adequate chain of custody goes to the weight rather than the admissibility of the evidence, and thus is reserved for the jury. *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir.1981). Moreover, several witnesses observed the knife at the scene of the shooting and positively identified it at trial.

form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict.... If ... there is no view of the case which makes the jury's answers consistent, and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment, then the judgment must be reversed and the cause be remanded for trial anew.

*Id.* at 915.

■ The record reflects evidence that Sheriff Patrick unilaterally revoked Baltezore's bond without notice or hearing, and that the bond revocation served as the basis for Baltezore's arrest. The jury in this case was instructed that none of the defendants had the right, under Louisiana law, to revoke a bail bond; a bond could be revoked only after notice to the defendant and a hearing before a district court judge. Clearly there is support for the jury's assessment of punitive damages against Patrick for unlawful arrest. Also before the jury, however, was evidence that Morace and Frasier acted on Patrick's order to arrest Baltezore and believed Baltezore's bond had been legally revoked. The jury therefore could have reasonably believed that any injury to Baltezore stemmed from Patrick's initial wrongful act and not from the deputies' mere compliance with Patrick's order. Thus there is no discrepancy or inconsistency in the jury's assessment of damages solely against Patrick that would require judgment notwithstanding the verdict or a new trial.

### C.

After trial, the plaintiff and defendants moved for a new trial. The court denied the motions except with respect to damages. The court ordered a new trial on damages unless the parties accepted remittiturs. The plaintiff accepted a remittitur of her punitive damage award under protest and attached a letter memorandum complaining that the court erred in failing to award her compensatory damages against Sheriff Patrick for the unlawful arrest. The district court, treating her letter as a motion to reconsider, held that the seventh amendment barred an award of compensatory damages where the jury had awarded none. The plaintiff contends on appeal that the district court erred in failing to award compensatory damages against Sheriff Patrick and erred in reducing the punitive damages assessed against Patrick.

■ The plaintiff's challenge to the court's judgment is unavailing. The district court granted a new trial on damages but provided that the plaintiff could accept remitted damages in lieu of a new trial. The plaintiff specifically chose to accept the remittitur. Although the plaintiff accepted the court's remittitur under protest, the established law of this circuit is that remittiturs accepted under protest are not subject to appeal. *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 386 (5th Cir. 1985); *Westerman v. Sears, Roebuck & Co.,* 577 F.2d 873, 883 (5th Cir.1978); *see also Krahn v. B.F. Goodrich Co.,* 559 F.2d 308, 308 (5th Cir.1977).[6]

### D.

■ Finally, the plaintiff argues that the district court erred in directing a verdict against her on her state law negligence

---

**6.** In their brief and at oral argument, the defendants argue that punitive damages may not be assessed in a section 1983 action when there is an absence of a compensatory damage award. The defendants did not appeal the punitive damage award and thus it is not properly before this court. Moreover, it is settled that punitive damages may be awarded in a section 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated. *McCulloch v. Glasgow,* 620 F.2d 47, 51 (5th Cir.1980); *accord Dykes v. Hosemann,* 743 F.2d 1488, 1500 (11th Cir.1984); *see also Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1639 n. 21, 75 L.Ed.2d 632 (1983) (quoting *Carlson v. Green,* 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 1473 n. 9, 64 L.Ed.2d 15 (1980) ("punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury")).

claim. The essence of the plaintiff's claim is that Morace and Frasier negligently failed to follow standard police procedures and exercise reasonable care in the arrest, search and transportation of Baltezore. Had the defendants exercised reasonable care, the plaintiff alleges, they would have discovered Baltezore's knife and taken adequate steps to secure his person. Instead, the knife was not discovered, and Baltezore was handcuffed with his hands in front of him and placed on the front seat of Frasier's car, creating a "zone of danger" that led to the shooting.

The plaintiff's theory is based primarily upon La.Civ.Code Ann. art. 2315 and 2316[7] and a trio of decisions of the Louisiana Court of Appeals.[8] Contrary to the plaintiff's contention, however, Louisiana law does not provide a cause of action under the facts of this case. To illustrate, in *Frank v. Pitre*, 353 So.2d 1293 (La.1977), the plaintiff, a bar patron, was shot by a parolee who had been negligently released from jail by a deputy sheriff. The Louisiana Supreme Court reversed the trial court's judgment against the deputy, reasoning that the deputy's negligence was not the cause of the shooting. The court stated:

> It is not enough to say that if [the parolee] had not been released ... the tragedy would not have occurred. If [the parolee's] friend had not given him a ride to town the shooting would not have happened. There must be something more; there must be a closer connection between the act of the defendant and the injury of the plaintiff.

*Id.* at 1296.

Deputies Frasier and Morace are not liable for Baltezore's death under Louisiana negligence law for the reasons expressed in *Frank*. As Justice Tate observed in his concurrence in *Frank:* "For a defendant's violation of a duty to be a legal cause of an injury, his violation must not only be a cause in fact of (i.e., a substantial factor contributing to) the injury, but the duty violated must also have included within its purpose the prevention of the risk encountered by the plaintiff to his injury." *Id.* Frasier's duty to conduct a reasonable arrest and search did not include within its purpose the prevention of the risk encountered by Baltezore, that is, exposure to harm from Frasier's act of self-defense. Thus, under Louisiana law we reject the plaintiff's theory and affirm the district court's directed verdict on the negligence claim.

In conclusion, we do not consider the propriety of the plaintiff's damage award because the plaintiff accepted a remittitur in district court. Next, we hold that the jury verdict concerning liability is supported by substantial evidence and thus the district court did not abuse its discretion in denying the plaintiff's motion for judgment notwithstanding the verdict or new trial. We hold also that the court did not abuse its discretion in admitting into evidence the knife discovered in Frasier's patrol car. We further hold that the court did not err in directing a verdict against the plaintiff on her state-law negligence claim. Finally, the court was not limited to awarding Frasier only those damages requested in his counterclaim. The district court's judgment is, in all respects,

AFFIRMED.

---

7. La.Civ.Code Ann. art. 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La.Civ.Code Ann. art. 2315 provides, among other things, for the survival of negligence actions to the plaintiff's estate.

8. *Barlow v. City of New Orleans*, 228 So.2d 47 (La.Ct.App.1969); *Shuff v. Zurich-American Insurance Co.*, 173 So.2d 392 (La.Ct.App.1965);

*Kimbrell v. American Indemnity Co.*, 56 So.2d 880 (La.Ct.App.1952). These cases stand for the proposition that a police officer is to provide a higher degree of care for the safety and protection of intoxicated prisoners than for prisoners in control of their physical and mental faculties. Louisiana law does not, however, impose a duty upon an officer to protect a prisoner from harm arising out of an attack by the prisoner on the officer.